INGALLS, J., not acting.

---

### BROEZEL *et al v.* CITY OF BUFFALO.

*(Supreme Court, General Term, Fifth Department.   June 22, 1889.)*

1. MUNICIPAL CORPORATIONS—EXTENSION OF STREET—PROCEDURE.
   Under a clause in the charter of the city of Buffalo, (Laws N. Y. 1870, c. 519,) which provides that the purpose for which land shall be taken by the city shall be stated in the resolution of intention, a resolution stating that the land is to be taken for the purpose of extending a certain street, naming the street, and giving the lines of such extension to their termini, is sufficient.

2. SAME—COMMISSIONERS—APPOINTMENT—NOTICE.
   In proceedings to condemn land for street purposes, and make a special assessment therefor, a notice that application will be made for the appointment of commissioners "to appraise such land and property" is sufficient to justify the appointment of commissioners to award just compensation to the owners and persons interested in the land to be taken.

3. SAME—ASSESSMENT—DESCRIPTION OF PROPERTY.
   In such a proceeding, changes made by the board of assessors in the description of part of the land assessed, in order to correct errors made by the commissioners, do not invalidate the assessment as to property owners the description of whose property was not changed.

Appeal from special term, Erie county.

Action by John Broezel, Jr., and others against the city of Buffalo, to vacate and set aside as a cloud upon plaintiff's title certain special assessments levied on their land for the purpose of extending Ellicott street.   Judgment for defendant.   Plaintiffs appeal.

Argued before BARKER, P. J., and DWIGHT and MACOMBER, JJ.

*George Clinton,* for appellants.   *M. F. Worthington* and *Frank C. Laughlin,* for respondent.

MACOMBER, J.   The common council of the city of Buffalo, on the 28th day of May, 1883, passed an ordinance for the acquisition of lands necessary to extend Ellicott street from the southerly line of Seneca street to the northerly line of Exchange street, particularly describing the same.   This resolution having been approved by the mayor, the city did, on the 2d day of June, cause to be published in the official newspaper of the city such notice of intention as was declared by its resolution, which notice was published on the 4th, 5th, 6th, 7th, 8th, 9th, 11th, 12th, 13th, 14th, 15th, and 16th days of that month, the 10th and 17th days being Sundays.   On the 18th day of June the common council passed a resolution of determination to take the lands above mentioned.

It is urged by the learned counsel for the appellants that the original resolution of intention, and the subsequent resolution of determination, to take the lands, were insufficient to give jurisdiction to the superior court of the city of Buffalo, which subsequently, by proper proceedings, condemned the lands in pursuance of the provisions of the city charter, inasmuch as the same do not specifically declare the use and purpose for which such lands are to be taken.   This contention seems to us to be rather a verbal criticism upon the language of the resolution than an objection going to the merits.   The preliminary resolution declared that it was for the purpose of extending Ellicott street, giving the lines of such extension to the termini of such lines.   This is all that could be required under the provisions of the charter,[1] which pro-

---

[1] Laws N. Y. 1870, c. 519.

vide that the purposes for which lands shall be taken shall be stated in the resolution.

On the 8th day of December, 1883, the counsel for the defendant, in pursuance of notice duly given, made an application in behalf of the defendant, upon due proof, for the appointment of commissioners to ascertain and report the just compensation to be paid to the owners and persons interested in the lands and property to be taken and appropriated for laying out said street. Such is the finding of the trial judge. The language of the notice, however, was that the application would be made for the appointment of commissioners "to appraise such lands and property." This also seems to us to be a mere verbal criticism upon the notice. The commissioners proceeded and did make what appears to be an award of just compensation to the owners and persons interested in the lands, in accordance with the law, and substantially in accordance with the notice of motion.

It is further contended in behalf of the appellants that the proceedings were irregular and void, because changes were made in the description of lands, which had the effect of taking from the assessed property lands which had been before assessed, and that in some cases lands not originally assessed were added to the roll, while the amounts originally assessed upon the different pieces of property were not changed. The fourteenth finding of fact, however, of the learned judge, completely disposes of this proposition. Irregularities, it is true, had crept into the assessment roll, as they are very likely to do in proceedings of this character. The board of assessors, in pursuance of section 38 of title 7 of the city charter, undertook to, and actually did, correct such errors, but they did not strike out the assessment against any property contained in the roll as originally presented to the common counsel by the city attorney, in which the plaintiffs or any of them were interested. No name of a person or corporation assessed was changed, nor the amount assessed altered. No names were added to the assessment roll after this time. The only change or alteration made by the board of assessors had reference solely to the description of the lands assessed, and, in the language of the finding, "in no instance was any change or alteration made in the description of any of the lands assessed to any of the plaintiffs to this action, but the changes or alterations made in the description were in respect to descriptions of lands assessed to others than these plaintiffs." This conclusion of fact is fully sustained by the evidence. The whole case shows that the assessors, in making and levying the assessment, assessed the whole amount ordered to be assessed upon the parcels of land benefited by the improvement, in proportion to such benefit, and that no one of the plaintiffs was affected by any mere correction of description which was made in the proceedings after they had been initiated.

The questions involved in the appeal, with a few exceptions, were thoroughly considered by the superior court of the city of Buffalo in these proceedings for the extension of Ellicott street, in an elaborate opinion, a copy of which has been furnished to us.[1] The petition of the plaintiff Ferris was filed in that court before the bringing of this action; but, while the petitions of all the other plaintiff's in this action were not presented in that proceeding until after this suit was begun, they were all considered by that court, and disposed of by the decision and opinion already mentioned. While the judgment of the superior court is not a bar to this action, yet the cogency of the reasoning of the learned judge delivering the opinion would lead us to the same conclusion upon all the questions that were distinctively raised upon the proceedings for the acquisition of the land alone, irrespective of some facts which have been attempted to be shown *aliunde* in the action before us. The questions not so specifically raised by the plaintiffs in their proceedings in the

[1] See note at end of case.

superior court were fully considered by the learned judge who tried this action, who has written an opinion in which we fully concur. The judgment should be affirmed, with costs.

NOTE. This was a decision of the special term of the superior court of Buffalo. The opinion was filed September 28, 1887, and is as follows:

HATCH, J. This proceeding is brought under and by virtue of chapter 275, Laws 1880. So much of said act as confers power upon the court to entertain this proceeding is found in section 9, and is as follows: "Where the invalidity or irregularity of any tax or assessment appears upon the face of the proceedings, any party in interest may apply by petition to the superior court of Buffalo for an order canceling the same. Said court shall require reasonable notice to be given to the city of such petition, and shall hear the proofs and allegations of the parties, and shall, in case such irregularity or invalidity is established, order such tax or assessment to be canceled, and thereupon the same shall be canceled by the comptroller." Under this provision the court is limited to such matters as appear upon the face of the proceedings. Counsel for the petitioner not only attacks the immediate proceedings connected with the levying of the assessment, but he also challenges the proceedings taken to condemn the lands necessary for the proposed improvement, and which form the basis for the laying of this assessment. The claim is that the condemnation proceedings, by reason of a failure to comply with the law, are void. I am of opinion that, so far as mere irregularities are concerned, appearing in the proceedings last mentioned, no power rests in this court upon this proceeding to entertain them; but, if the proceedings are so defective as to show that the common council never acquired jurisdiction to act, then the proceeding is a nullity, and all subsequent acts founded upon such void proceeding must fall with it. Such void act may be taken advantage of in any stage of the proceeding. In re Buhler, 19 How. Pr. 317, 320. Any other rule would give force and effect to an act which has no legal existence. It appears from the records introduced in evidence, and was conceded upon the hearing, that, after the court had confirmed the proceedings taken to condemn the lands, the common council directed the attorney for the city to make a motion in this court to vacate and set aside said proceedings, and the whole thereof. Such motion was made and brought on for the July special term, 1885, before Judge SMITH. Upon the argument the same questions were presented for consideration and urged (so far as relates to the condemnation proceedings) as are now presented and argued. A careful examination of the opinion of the learned judge, written on deciding the motion, shows that he exhaustively and ably considered each objection in detail, and reached the conclusion that the proceedings were regular, and in substantial compliance with the statute. See In the Matter of the Extension of Ellicott Street in the City of Buffalo, from Seneca Street to Exchange Street, (MS. opinion, SMITH, J., filed July 29, 1885, not reported.) Upon a re-examination of this question, I see no reason for departing from the conclusions there reached. That motion was undoubtedly made for the purpose of testing the validity of the proceedings taken before ordering the assessment levied. The magnitude of the amount involved, coupled with the objections urged and pertinaciously argued, rendered such step one of unquestioned wisdom. No appeal was taken from the decision. To now overturn such conclusion would tend to disturb the decisions of courts exercising concurrent powers, and to render uncertain, when the object is to make stable and certain. In view of this decision upon the same facts, I should feel impelled to follow it, unless so plain an error was committed as to leave no room for doubt. It is needless to add that such is not the case here. Rogers v. Railroad Co., 21 Hun. 44; Moore v. City of Albany, 98 N. Y. 396, 410. Adopting the rule of the above authorities, and for the reasons stated, it follows that the objections to the condemnation proceedings must fail.

The objections to the roll itself, and the proceedings on its ordering, are numerous. They will now be considered. Section 14, tit. 8, City Charter, provides that upon the confirmation of the report of the commissioners the common council shall ascertain the amount of money required to pay the compensation awarded, and the costs of the proceeding. How this shall be ascertained by the council is not pointed out. They are left, therefore, to adopt such means as will put them in possession of the necessary facts. As enabling them to determine the amount, official information, imparted by the law officers of the municipality who had the proceedings in charge, and who would naturally know the extent of the necessary costs and expenses of the proceeding, would be competent evidence upon which the council might act in determining the amount. It appears from the minutes that this is what the common council did. But it is suggested that the paper upon which they acted was signed by Giles Stillwell, who was not an officer of the city government. It appears that Mr. Stillwell was city attorney at the time when these proceedings were instituted. His successor applied to, and was granted leave by, the common council to employ Mr. Stillwell to attend to such unfinished matters as in tne judgment of his successor was proper and necessary. The council had before them, at the time of ascertaining the necessary costs and expenses of the proceeding, a communication headed "Report from the Late City Attorney," which stated that the total amount of the awards, costs, and expenses of the proceedings, naming it,

was $183,493.09; signed, "GILES STILLWELL." Minutes Common Council Proceedings for 1884, pp. 21, 165. From this the presumption arises that he was employed about the conduct of the proceedings. It was an official communication, and the council were authorized to act upon it. Besides, it does not appear but that the council made other investigation. The burden is upon the petitioner to show affirmatively that it did not. Welty, Assessm. § 205, p. 363; In re Brady, 85 N. Y. 268, 269. I find no error committed here.

Objection is made that the resolution of the common council directing the assessment is void, for the reason that the resolution required the assessors to assess the amount upon "the property deemed benefited," while the charter directs that it be "assessed upon the real estate benefited," (section 14, tit. 8, Charter,) and that the direction of the statute to the assessors is to "assess the whole amount ordered to be assessed upon the parcels of land benefited by the work, act, or improvement, in proportion to such benefit," (section 3, tit. 6, Laws 1870, c. 519,) while the certificate of the assessors attached to the assessment roll states that they assessed "upon the property by them deemed benefited." The claim, in brief, is that the common council violated the statute in ordering the assessment, and the assessors violated the statute in levying the assess-ment, under section 14, tit. 8, Charter, supra. The common council is authorized to inquire into and ascertain the amount of money to be raised, and whether it shall be raised by general tax or local assessment. If in the general tax, it shall be included and raised in the general tax thereafter levied. If (as in the present case) the amount is to be raised by local assessment, it shall cause such sum to be assessed upon the real estate benefited. It is thus seen that, so far as mere language goes, the council is limited in its authority to direct the method of levying the assessment to "the real estate benefited." The principle upon which it shall be levied is stated in terms in section 3, tit. 6, above quoted; thus showing (except as implied) that the method and manner of spreading the assessment is to be accomplished by virtue of the statute, and not by direction of the council. The council sets the assessors in motion, but the statute commands them how they shall perform their duties, by which they are bound. Butts v. City of Rochester, 1 Hun, 598. The common council having jurisdiction to order the assessment, if, in ordering, they directed the tax to be levied upon wrong property, or a wrong principle, yet, if the assessors obeyed the mandate of the statute, and properly levied the tax, such irregularity would be cured, as the tax would then be levied in conformity with the statute.

The first specific objection is that the council directed the assessment to be made upon "property," instead of "real estate." It is sufficient to say, in answer, that "real estate" is embraced in the word "property," and its use in this connection is limited to such property as the statute directed should be taxed. Besides, the assessors spread the tax upon real estate as required by the statute, thus curing the defect, if any existed. This objection is clearly without merit. The further objection is that the resolution of the common council is void for the reason that it directs the assessors to assess upon property "deemed benefited," and the assessors followed such direction, while the authority conferred by the charter directs the assessment to be made upon the "real estate benefited, in proportion to such benefit." The vice claimed is in the use of the word "deemed," in that it substitutes the opinion of the assessors for the command of the statute. This is an extremely narrow and technical view of the subject and the language used. The legislature, by this statute, have laid down a rule to be followed. They could not practically exercise such authority themselves, as they could not view the land, and consequently could not determine what property was benefited by the proposed improvement. They therefore establish the rule, and delegate the power in this case to the assessors, who are moved by the council. In levying this assessment the assessors acted in a judicial capacity, and their determination is a judgment. Williams v. Weaver, 75 N. Y. 30, 33, 34; Barhyte v. Shepherd, 35 N. Y. 237; Railroad Co. v. Nolan, 48 N. Y. 513. If the assessment was levied by the legislature itself, it could only arrive at the result provided by its rule by the exercise of its judgment, and its judgment would be based upon its opinion. ("Judgment" and "opinion," in this connection, are convertible terms.) The assessors could do no more. It is manifest that the only standard by which the assessment can be levied must rest in the opinion of the persons charged with the duty of laying it. Lyon v. City of Brooklyn, 28 Barb. 609–612. It has already been seen that acting upon their opinion produces a judgment. This necessarily implies judicial investigation, examination, and ascertainment. Freem. Judgm. (2d Ed.) § 2531; In re Cruger, 84 N. Y. 619-621. The use of the word "deem," in the connection in which it appears, must be construed to mean a direction to investigate, consider, and determine, from which they may pronounce a proper judgment. I see no difference in the actual result and the means by which it is reached; between the direction given by the council and the language of the statute. The substantial effect of the one is precisely the same as the other. It is sufficient if there be a substantial compliance with the requirements of the statute. Sorchan v. City of Brooklyn, 62 N. Y. 339; Railroad Co. v. Supervisors, 48 N. Y. 93, 105, 106; People v. Jones, 43 Hun, 131. The first charter of the city of Buffalo (Laws 1832, c. 179) provided by section 41 that the expense of acquiring lands should be "assessed and apportioned on the real estate benefited thereby, as near as may be in proportion to the benefits." Section 42 required the council to cause the expense of other local improvements "to be assessed

upon all the real estate in said city in proportion to the benefits resulting thereto, as near as may be;" that the assessors, upon the direction of the council, should assess "on the real estate deemed by them to be benefited thereby in proportion to the benefits resulting thereto." In the next year, Laws 1833, c. 60, § 42, was amended, and in respect to the direction of the common council to levy the assessment it read: "To be assessed upon the real estate in said city deemed benefited by the improvements, in proportion to the benefits, as near as may be." The direction to the assessors remained unchanged. By Laws 1843, c. 132, this charter was repealed and a new charter enacted, divided for the first time into titles. So far as the assessments for acquiring lands are concerned, the language adopted is the same as the old law. As to other local improvements, section 11 of title 6 directed the council to cause the expense "to be assessed upon the real estate deemed benefited by such improvements in proportion to the benefits." The direction to the assessors was "to assess the amount fixed by the council [as the expense] on the property benefited as equitably as they can." The statute so remained until 1853, when by chapter 230, Laws of that year, the chapter was substantially repealed. With respect to the expense of acquiring lands it provided by section 17, tit. 8, among other things, that the council shall direct it "to be assessed upon the land benefited, and the assessment shall be made as in other cases." In respect to other local improvements, section 19, tit. 8, provided that the council may cause the expense "to be assessed upon the real estate in said city benefited, in proportion to the benefits." In respect to the directions to the assessors, section 20, tit. 8, provided: "They shall assess the whole amount upon the parcels of land benefited, in proportion to such benefits." This language remained unchanged until the revised charter of 1870 was adopted, which placed the subject now under consideration in its present form.

It is not suggested that any of these acts were unconstitutional, and yet they all proceed upon the theory that the assessment to be levied is left to the judgment and opinion of the assessors under the rule prescribed; and although the word "deem" is used in connection with the duties prescribed, yet it clearly implies the exercise of judgment, as distinguished from mere arbitrary discretion. The changes which have taken place have never affected the principle which must be followed in levying assessments under this act, or the method and manner by which the conclusion is reached. In Davis v. Davis, 75 N. Y. 221, Justice ANDREWS quotes with approval the language of SPENCER, J., in Taylor v. Delancy, 2 Caines, Cas. 151: "Where the law, antecedently to the revision of the statutes, is settled either by clear expressions in the statutes or adjudications on them, the mere change of phraseology shall not be deemed or construed a change of the law, unless such phraseology evidently purports an intention in the legislature to work a change." Douglas v. Douglas, 5 Hun, 140. The claim, therefore, that this amendment created a new rule by removing a discretion vested in the assessors, cannot be upheld, not only for the reasons above stated, but also for the reasons that such construction violates a settled principle of law. The rule of law always was that in local assessments where the principle followed is that of benefits the tax must be distributed in proportion to such benefits. An act of the legislature which ignores this rule would be unconstitutional and void. In Stuart v. Palmer, 74 N. Y. 183, Mr. Justice EARL says: "But in all cases there must be apportionment of the burdens, either among all the property owners of the state, or of the local division of the state, or the property owners specially benefited by the improvements. In either case, if one is required to pay more than his share, he receives no corresponding benefit for the excess, and that may properly be styled 'extortion' or 'confiscation.' A tax or assessment upon property, arbitrarily imposed, without reference to some system of just apportionment, could not be upheld. Assessments for local improvements can be justified only upon the theory that the lands upon which they are laid are specially benefited by the improvements for which they are laid, and hence ought to bear the burden, rather than property generally; and if a law should authorize such assessments to be laid, without reference to benefits, it would either take property for the public good, without compensation, or it would take property from one person for the direct benefit of another, and in either aspect it would be unconstitutional." Page 189. Cooley, Tax'n, (2d Ed.) 646, 647. The contention of counsel, therefore, that a new principle of assessment was adopted by the amendment, cannot be sustained; otherwise the assessors might have levied a palpably unjust and unequal tax, and not only justify it, but sustain it upon the ground that they exercised their discretion, although they did not follow the law. Such a case is presented in the illustration of counsel for petitioner. The radical difficulty is that the law never tolerated such an assessment, nor was such construction placed upon the word "deemed," as used in the old statute. The sense in which it was used required the assessors to view, investigate, ascertain, and then determine who should be taxed, and the proportion each should bear, based upon benefits. The basis of determination was the opinion formed after such investigation. It was this judicial opinion which the legislature asked for when they directed the assessors to assess upon "property deemed benefited," and it was this opinion which the assessors had formed and promulgated when they said we have assessed upon the "real estate by us deemed benefited." It is thus seen that no new rule was adopted by the amendment. The change, however, states the legal rule which shall form the basis of local assessment in language which the courts had said the former language meant, and in so doing made the statute speak plain what before was implied.

It is further urged that the resolution of the council does not direct the assessors to levy the assessment in proportion to the benefits, and that the certificate of the assessors shows that they assessed upon the property deemed benefited, without showing that they laid it in proportion to benefits. As we have already seen, section 14, tit. 8, Charter, requires no direction from the council other than to assess upon the real estate benefited. The command to assess in proportion to benefits is the command of the statute to the assessors. So that, placing the construction upon the word "deemed," contained in the certificate of the assessors, as indicated in the foregoing discussion, it is in literal compliance with the requirements of section 14; consequently it shows compliance with the authority conferred upon the council to direct. So no error is committed in that respect. There is no command or direction contained in any statute which requires the assessors to make any certificate as to how they have spread the assessment. Section 7, tit. 6, Charter, requires them to make and sign a fair copy of the revised rolls. Beyond this there is no direction. The certificate does not state that they have not assessed in proportion to benefits; it is simply silent upon that subject. Does this certificate, then, impeach the action of the assessors, and show that they adopted a wrong principle in levying this assessment? Giving full force to the certificate, I am of the opinion that it does not impeach their action. The burden imposed upon the petitioner in this proceeding is to show affirmatively from the face of the record that the officers charged with the duty of levying this assessment have so far departed from the requirements of the law in matters of substance that the petitioner is thereby prejudiced, and the assessment vitiated. So far as this certificate goes, it is in compliance with law. If it is held invalid, it must be presumed that by not stating that they also assessed in proportion to benefits, therefore they did not so assess, and violated the law. In other words, the presumption must obtain that by the omission of the statutory words they violated the principle upon which the assessment was to be made. So far from this being the rule of law, it is directly the reverse. By section 36, tit. 7, of the charter, a presumption is created "that any tax levied and assessment made under this act is valid and regular, and that all the steps and proceedings required by the law were taken and had, until the contrary shall be made to appear." Where is it made to appear that this assessment was not laid upon the land benefited in proportion to benefits? Surely, an unauthorized certificate, by simply failing to show such fact, cannot be taken to overcome this statutory presumption, in the entire absence of other proof upon the subject. It has always been the law, aside from this statute, that the acts of public officers are presumed valid until the contrary appear, and that a duty to be performed has been properly performed. Hilts v. Colvin, 14 Johns. 181–184; Wood v. Terry, 4 Lans. 80–84; Wood v. Morehouse, 45 N. Y. 368; Colman v. Shattuck, 62 N. Y. 348. If the assessors had obeyed the directions of the statute, and simply signed the roll, the presumption would have sustained the regularity of this roll. If, by saying nothing, the roll would be upheld, it is difficult to see how a failure to say something more than they have said, which they are not required to say, vitiates their action. If there was any presumption or rule of construction which limited the basis of the assessment to the statements contained in the certificate, then a different conclusion might be reached; but where the presumption aids their action, and no proof impeaches it, it must be held conclusive.

It is further urged that the proof of publication of the notices required of the assessors and the city clerk, which are to be attached to the roll, are irregular, and consequently the roll is void. The objection is that the charter requires that the notices shall be published in five successive "numbers" of the official paper, while the affidavit states that the notice was published in five successive "publications" of the official paper. The direction to publish is contained in section 5, tit. 6, of the charter. By virtue of this section the assessors are directed, in the first week of each month after the completion of the assessment roll, to publish in the official paper a notice that the assessment roll is completed, and remains in their hands. Such notice is required to be published in five successive numbers of said paper, specifying the assessment by name, and state that it will remain at their office, open to inspection and revision, for 10 days from the first publication of such notice. Section 6 requires the roll to remain open for inspection and revision during the time specified in the notice. Section 7 requires that upon the expiration of the time they shall sign and make a fair copy of the roll, and attach thereto proof by affidavit of the giving of the required notices, and shall thereupon deliver it to the attorney. There is nothing upon the face of the record showing that these notices were not in fact published in five successive numbers of the official paper. I might therefore be content to rest my decision upon the authorities cited in the discussion already had. But there is another principle equally conclusive. The controlling and manifest intention of the legislature in adopting these provisions was to secure notice to be given to the person upon whom the tax was imposed. It was to meet the constitutional requirement that the citizen's property should not be taken except by "due process of law," which demands that notice be given, and provision made for a hearing. When the intent of the legislature can be ascertained, effect must be given to it. In re Commissioners, 66 N. Y. 413, 422. The legislative reason and intent will often control the strict letter of the statute. Upon the subject of notice the statute is not mandatory, but directory. The act required by the assessors in this particular is ministerial, not judicial. The object is to bring home notice to the tax-payer, that he may

be heard, and when that has been done, and the tax-payer heard, the object and purpose of the statute are obtained, and although the forms of the statute have been disregarded, and proof required omitted, or informally and irregularly made, yet the assessment will not thereby be rendered abortive. People v. Haupt, 104 N. Y. 377, 10 N. E. Rep. 871; People v. Supervisors of Ulster, 34 N. Y. 268-273; People v. Common Council, 5 Lans. 11-16; In re Folsom, 2 Thomp. & C. 55, 56; Gale v. Mead, 2 Denio, 160. Applying this rule to the facts in this proceeding, we find that the required notice was published, and that a notice, as required by section 8, tit. 6, of the charter, was mailed to petitioner. The affidavit of one of the assessors attached to the roll shows that the first publication was on February 1, 1886. The record is silent as to when the last publication took place, but it does state that there were five successive publications. In the case of the city clerk, the affidavit shows that there were five successive publications, the first on the 5th day of August, 1886, and the last on the 10th day of August, 1886. There is nothing whatever to show that there was more than one publication for each number of the paper. Upon the hearing in this proceeding it was conceded that the petitioner appeared, examined the roll, filed objections thereto, and was heard in opposition to the confirmation of the same. He is not shown to have been prejudiced in the slightest degree. There is therefore every reason for disregarding the irregularity, assuming it exists.

It is further urged that the proceedings are irregular in that the city clerk and city attorney failed in the performance of duties imposed upon them. By section 7, tit. 6, of the charter, when the roll is delivered to the attorney, he is thereupon required to examine into the regularity of the assessment. If he finds it regular, he annexes his certificate to the roll and delivers it to the city clerk, who is thereupon required to publish a notice in five successive numbers of the official paper that the roll is on file in his office, and that objections may be filed with him within 10 days from the first publication of the notice. Any person interested may file objections. If no objections are filed, the roll is deemed confirmed, and is then delivered to the comptroller. If objections are filed, the clerk is required, upon the expiration of the 10 days, to lay the roll before the common council, together with the objections. They shall hear the objections, and confirm or annul the roll, or refer it back to the assessors for a new assessment. If the city attorney shall find the roll irregular, he shall so state, specifying in what the irregularity consists, and lay the same before the council, who shall take such action thereon as it deems expedient. Sections 10 to 14, inclusive, tit. 6, City Charter. It is made to appear that the city attorney, upon receiving the roll, certified that the roll was irregular in respect to the description of certain real estate. This certificate, together with the roll, was then laid before the common council, when it was referred to a committee of that body, together with the assessors and city attorney. Certain descriptions were corrected, and the roll was again delivered to the attorney, who certified to its regularity, and delivered it to the city clerk. Thereupon the clerk caused notice to be published. The petitioner filed objections to the roll, which, together with the roll, were laid before the council. Petitioner's council was heard by that body in opposition to its confirmation. The objections failed, and the common council confirmed the roll. Thus it is seen that there was not only a substantial, but a literal, compliance with the statute. It may be true that the clerk commenced the publication of the notice before the proper certificate was attached, but if he did it injured no one,—could not have the slightest effect upon the validity of the assessment; for upon its discovery the roll was returned to its proper channel, and every formality observed. The reasoning and authorites cited to the preceding objections apply with equal force to this. There is another reason which is equally conclusive. The only evidence of irregularity is such as appears from repeated filing marks, and various dates to affidavits attached. All of these might have been made without the slightest departure from the statutory requirements. It cannot, therefore, be said that the irregularity appears upon the face of the roll. It is further urged that the assessors changed and made alterations in the roll in matter of substance when the roll was referred back to them by the common council. It is conceded that as to mere matters of description the assessors had the power to correct errors or mistakes made therein. But the claim made is that the land originally assessed was taken from the roll and relieved from bearing its proper share of the burden. If this be true, then this roll should not be allowed to stand, for the reason that it would then affirmatively appear that the statute had been violated in levying the assessment. The only evidence called to the court's notice in support of this claim is certain erasures connected with owners assessed, appearing upon the face of the roll. It does not appear when the erasures were made, or for what purpose, while it does appear that the roll was sent back for correction as to descriptions, and the erasures may have been made then. An inspection of the roll determines nothing beyond the appearance of erasures which relate to description of lands assessed. They are quite as consistent with an accidental mistake, which required erasing, while making up the roll, as with any other theory. There is nothing casting suspicion upon them. It cannot be held, therefore, that the irregularity alleged appears upon the face of the proceedings.

It is further urged that the roll is void for the reason that there is included within it property owned by the government of the United States. It may be assumed (although not decided) that the legislature has exempted this property from taxation for local improvements. Laws 1854, c. 1. But, if they have, the including it within this roll

does not have the effect of rendering it invalid. Its effect is to relieve petitioner's land from its proportionate share of burden to the extent which the lands are assessed. It must be assumed that the assessors would have distributed the tax as required by the statute, which would have increased petititioner's assessment. Consequently he is not prejudiced. If the government voluntarily pays the assessment, or is legally liable to pay, it will amount to an actual benefit. If the amount is placed in the general fund, and paid under a general tax levy, there is no presumption that petitioner's tax will be more than if the land had not been assessed. As to whether it will be less or more is too speculative to require consideration here. It is sufficient now to say that the petitioner has been in no wise prejudiced by including it within the roll. In re Folsom, 2 Thomp. & C. 55.

Finally, objection is made that, after the mayor had vetoed the resolution of the common council confirming this assessment roll, the council did not reconsider its former action, as required by the charter. Upon the reception of the message of the mayor withholding his approval of the resolution, the objections were on time upon the journal, and it was "moved that the communication be received and filed, and recommendation adopted." To this motion an amendment was offered "that the action of the council in confirming the roll be of force notwithstanding the objections of his honor, the mayor." Two other amendments were ruled out of order by the chair. A vote was then taken (the yeas and nays being called) upon the amendment, which was adopted by a vote of 18 to 6, thus obtaining the requisite number of votes to pass the resolution over the veto. This vote was entered upon the journal. The provision of the charter upon this subject is found in section 25, tit. 2, and is as follows: "Every ordinance and resolution of the common council shall be presented to the mayor before it shall be of force. If he approves it, he shall sign it; but if not, he shall return it to the city clerk with his objections, who shall lay the same before the common council at its next meeting thereafter. The common council shall enter the objections upon its journal, and proceed to reconsider it." The constitution of the United States, in the case of a vetoed bill, required the president to transmit it to the house in which it originated, with his objections, "who shall enter the objections at large on their journal, and proceed to reconsider it." Act 1, § 7. It will be noticed that the direction as to what shall be done both in the constitution and the charter is precisely alike. Cushing states: "This question is the same in all cases, namely, shall the bill pass notwithstanding the objections of the executive? and must in all cases be taken by yeas and nays, which must be recorded on the journal." Cush. Law & Pr. Leg. Assem. § 2386, pp. 923, 924. The rule adopted by the common council would seem to approximate quite closely to high authority. The provision of the state constitution requires the governor, when he fails to approve a bill, to "return it with his objections to the house in which it shall have originated, which shall enter the objections at large on the journal, and proceed to reconsider it." Article 4, § 9. Wilson's Digest of Parliamentary Law, page 292, states the question to be put on a vetoed bill: "Will the house, on reconsideration, agree to pass the bill?" I am of opinion that the reconsideration of the resolution was in substantial compliance with the charter's established rules, and parliamentary precedents. The essential thing was the vote, which indicated that the required number of members desired the resolution to be of force notwithstanding the objections. The vote was regularly taken, and the required number clearly obtained. Those views lead to a dismissal of the petition.