CHRISTOPHER SMITH, Appellant, *v.* CITY OF BUFFALO, Respondent.

*Municipal corporation — apportionment by city assessors of an assessment for a local improvement — effect on statutory construction of long acquiescence in their action — public streets are not assessable — an assessment, limited to the property benefited — presumption as to good faith of public officers — dedication and acceptance — filing maps showing it — confirmation of an assessment — power of the Legislature to cure irregularities in an assessment.*

Upon the trial of an action brought to set aside an assessment made by a board of assessors upon lands located in the city of Buffalo, on the ground that under the city charter the authority to apportion the assessment was delegated to the common council and not to the board of assessors, it appeared that the city assessors apportioned the assessment under a resolution of the common council, and that it had been the practice for forty years to have the assessors make such assessments.

*Held,* that, even if the language of the charter were obscure or doubtful in this regard, the long acquiescence of the municipality in such action on the part of the assessors was controlling in the interpretation of the charter upon the question whether the power inhered in the assessors or in the common council;

That if there were any question as to the power of the board of assessors to designate the territory benefited by the improvement, the confirmation of their report by the common council, with full knowledge of all the facts, amounted to a substantial compliance with a requirement of the charter that the act should be done by the common council.

Streets are intended for public travel, and are properly devoted to public use, and where no provisions are contained in the charter of a city, or in the laws of the State, authorizing the city to tax its streets for a public improvement, they are exempt from taxation.

The public streets of a city cannot be regarded as the property of the city, in the sense that a city hall, school houses and other public buildings owned by a municipality are such, and consequently are not liable to be assessed for public improvement.

An assessment for a local improvement must be limited to the buildings and lots benefited by it.

Public officers are presumed to have performed their duty, and where they fail
to include in an assessment roll certain strips of land on the ground that they
are public streets, the court must assume that these were public highways,
and, therefore, exempt from taxation. The burden is upon the person claiming
that such strips of land belonged to individuals, and had not been dedicated to
public use as highways, to overcome this presumption.

The dedication of land by an owner to the use of public streets does not require
that the legal title shall pass from the owner to the municipality. All that is
requisite is that the owner assent to the public use, and that the municipality
accept such dedication.

Acceptance may be express and appear of record, or it may be implied from repairs
made and ordered, or knowingly paid for by the municipality which has the
legal authority to adopt the street or highway, or from long user by the public.

The filing of maps certified by the proper city officials in the proper city offices,
showing plots of land that had been subdivided and laid out into city lots,
including streets, their names, widths and connections, furnishes clear evidence
of the dedication to the public use of the streets shown upon such maps.

There is no mandatory provision of the charter of the city of Buffalo requiring
that the assessment roll shall be confirmed within one year after the confirma-
tion of the report of commissioners awarding compensation to the owners of
land taken for a local improvement.

Any irregularity in the matter of assessments in the city of Buffalo which occurred
prior to the 1st day of January, 1892, was cured by the passage of chapter 376
of the Laws of 1892, and after the passage of that act no taxpayer could
successfully resist the payment of a tax under objections based on an irregularity
which existed at the time of the passage of the act.

The Legislature has power to legalize proceedings to collect taxes where the law
has not been strictly pursued, in cases where the taxes were not invalid for
want of jurisdiction, and where no constitutional rights of the taxpayer have
been violated.

APPEAL by the plaintiff, Christopher Smith, from a judgment of
the Supreme Court in favor of the defendant, entered in the office
of the clerk of the county of Erie on the 11th day of October,
1894, upon the decision of the court rendered after a trial at the
Erie Special Term dismissing the plaintiff's complaint.

*Stephen Lockwood,* for the appellant.

*Frank C. Laughlin,* for the respondent.

DAVY, J.:

This action was brought to set aside a local assessment on the
plaintiff's land located in the city of Buffalo, amounting to eighty-

one dollars and thirty-eight cents, made to defray the costs and expenses of acquiring lands for the extension of Bailey avenue.

It was stipulated, for the purpose of condensing the evidence, that there were four questions only to be submitted on this appeal.

It appears from the evidence that in September, 1890, the common council of the city of Buffalo instituted proceedings for the extension of said avenue. The report of the commissioners, who were appointed to appraise the damages to the landowners, was confirmed on the 19th day of January, 1891. The common council thereupon passed the following resolution:

" *Resolved*, That the amount of the expense to be assessed for the improvement of extending Bailey avenue from the present terminus to the city line to Main street be and hereby is determined to be $16,258.07, and that the city assessors be and they are hereby directed to make an assessment of the said sum * * * upon the real estate benefited by such improvement in proportion to the benefits resulting thereto."

In pursuance of the above resolution the assessors decided what lands, in their judgment, were benefited by the improvement, and filed the assessment roll, which was confirmed by the common council June 1, 1892.

The learned counsel for the appellant contends that under the city charter the authority to apportion this assessment was delegated to the common council only and not to the board of assessors.

It was contended on the argument, and not disputed, that there has been no material change in the provisions of the city charter on this subject in the last forty years, and that the common council has never determined the territory benefited by the local improvements, but has left it to the board of assessors. Such acquiescence and recognition on the part of the municipality for so long a period must, it seems to me, be regarded as controlling in the interpretation of the charter upon the point under discussion. (*Easton* v. *Pickersgill*, 55 N. Y. 310; *Matter of Washington Street Asylum & Park R. R. Co.*, 115 id. 442.)

If the language of the charter was obscure or doubtful as to its meaning, we think that we would not even then be justified in disregarding the construction put upon it by the municipal authorities for so many years. There would be no safety to the taxpayers if it

could be successfully contended that the officers representing the municipality in this class of cases had been mistaken as to the true meaning of the·charter. The injurious consequences of a different construction after an acquiescence of so long a period might prove very disastrous to the taxpayers of the city. But, aside from the argument of long acquiescence on the part of the municipality, it appears that the courts through all this long period have been constantly passing upon the validity of the assessments, and in no case called to our attention has it been held that the board of assessors did not have the power, under the city charter, to determine the territory benefited by local improvements similar to the one in question.

The Superior Court of the city of Buffalo in *The Matter of Ferris* (10 N. Y. St. Repr. 482) held that the Legislature had delegated the power to the board of assessors under the city charter to determine what property was benefited by local improvements. The views expressed by the learned court in that case seem to have met the approval of this court in the case of *Broezel* v. *City of Buffalo* (6 N. Y. Supp. 724).

I am inclined to think that the plaintiff is not in position to complain even if the correctness of our views upon this point could be doubted. The mode of designating the territory to be benefited and assessed was not prejudicial to the appellant; at least, he has failed to show that he has been injured or aggrieved by the assessors designating the territory instead of the common council.

It was held in *Voght et al.* v. *The City of Buffalo* (133 N. Y. 464) that where there was a technical irregularity of the common council in the mode of making assessments for street improvements, in the absence of evidence showing a substantial injury to the plaintiff, he was not in position to complain and, therefore, could not maintain the action. (*Morse* v. *The City of Buffalo*, 35 Hun, 613; *Matter of Mutual Life Insurance Company*, 89 N. Y. 530.)

Judge GARDINER, in *Manice et al.* v. *The Mayor, etc.*, (8 N. Y. 131), in discussing the powers vested in the common council under the city charter, says: " If the common council, as the plaintiffs insist, were bound to designate the territory to be assessed, as the charter was silent as to the time when and the manner in which

this was to be done, a confirmation of the report of the assessors which included the whole subject would be a substantial compliance with the requirement."

If there were any question as to the power of the board of assessors to designate the territory benefited by the improvement, the confirmation of the report by the common council, with full knowledge of all the facts, amounted to a substantial compliance with the requirements of the statute.

The appellant also contends that the public streets opening into Bailey avenue were rendered more valuable to the city of Buffalo by the improvement, and that it was error on the part of the board of assessors to omit said streets from the assessment roll and from contributing to the expenses of the improvement.

Streets are intended for the public travel, and the opening of the avenue in question would naturally tend to increase the travel over all the connecting streets and thereby impose greater expense upon the municipality in cleaning and keeping them in repair. So that the improvement could not be considered a benefit to the city in a pecuniary point of view. As a rule, all property within the municipality is subject to taxation by the general laws of the State, and where property is taxable for one purpose, it is usually held to be taxable for all purposes of general taxation. But this rule does not apply to municipal property devoted to public purposes. Such property is not taxable by the corporation whose property it is, unless expressly made so by statute.

No provisions are made in the city charter or the statute laws of the State authorizing the city of Buffalo to tax its public streets. It has been repeatedly held that property devoted to public use, such as public buildings and parks, cannot, in the absence of express legislative authority, be taxed or taken to satisfy a judgment against the corporation.

Judge ANDREWS, in *People ex rel. Mayor, etc., of New York* v. *Assessors* (111 N. Y. 509), says: "Property of a municipality acquired and held for governmental and public uses and used for public purposes is not a taxable subject within the purview of the tax laws, unless specially included." (*City of Rochester* v. *The Town of Rush*, 80 N. Y. 302.)

While property owned by a municipality for public purposes is

exempt from taxation, it is liable, however, to be assessed for local improvements.

Judge EARL, in *Roosevelt Hospital* v. *Mayor, etc.* (84 N. Y. 114), says : " The exemption claimed finds no sanction in the general legislation of the State or in public policy. All colleges, churches, seminaries of learning, court houses, jails, school houses, and even the lands of the State, unless by appropriate words specially exempted, are liable to be assessed for local improvements."

The public streets of the city of Buffalo in no sense can be regarded as the property of the city, like school houses and the city hall and other public buildings in which the title to the land vests in the city, and may be sold and conveyed by the city authorities. The municipal authorities would have no power to alienate their streets or to devote them to uses inconsistent with the rights of the general public and the abutting landowners, unless expressly authorized by the legislature.

The opening of Bailey avenue may have added to the convenience of the owners and occupants of houses and lots on the connecting streets and may have increased their value ; if it did, that fact was taken into consideration, no doubt, by the assessors who were charged with the duty of ascertaining the property benefited by the improvement. It seems to me that the assessment must be limited to the buildings and lots benefited by the improvement, and that no legal assessment could be imposed upon the public streets. (*People ex rel. Davidson* v. *Gilon et al.*, 126 N. Y. 148.)

It is also contended by the appellant that there were certain strips of land owned by private individuals that were not assessed, for the reason that the assessors recognized them as public streets. This contention, in my judgment, has no real foundation to rest upon. The presumption is that public officers perform their duty. If the lands in question are not included in the assessment rolls the presumption is that they were public highways and exempt from assessment. The burden was on the plaintiff to overcome this presumption. (*In re Hebrew Benevolent Orphan Asylum,* 70 N. Y. 476.) The principal question to be considered upon this point is, whether the strips of land in dispute have been dedicated by the owners to the use of the public for the purposes of travel, and whether they have been accepted by the city for that purpose.

The learned judge before whom this case was tried found that the assessment roll showed that all the lands benefited by the improvement, as ascertained by the assessors, were included in the assessment except public streets, or what appeared to be such, upon the maps of the proper departments of the city government to which the assessors referred, to ascertain the streets of the city, and that it was not established upon the trial that any lands were excluded from the assessment that should not have been.

Dillon on Municipal Corporations (§ 628) lays down the rule : That dedications of land to the use of public streets may be divided into two classes: *First*, statutory dedications; *second*, common-law dedications. Statutory dedications can be made only by pursuing substantially the course prescribed by the particular statute, and where the statutory requirements have been pursued it dispenses with any assent on the part of the public, and in this respect it differs from a common-law dedication. But the rule is well settled that an incomplete or defective statutory dedication will, when accepted by the public, or when rights are acquired under it by third persons, operate in favor of the public and has as much binding force as a common-law dedication by the owner. To establish a common-law dedication it is not essential that the legal title should pass from the owner to the municipality. All that is required is the assent of the owner of the soil that it may be used by the public as a public street, and the acceptance of such dedication by the municipality for the public. (*Flack et al.* v. *Village of Green Island*, 122 N. Y. 107.)

It was also held in *Cook* v. *Harris* (61 N. Y. 448–454) that no particular length of time is essential to make a dedication valid and irrevocable. It must appear that the owner of the soil intended to dedicate it for a public highway, and that it was accepted by the public. Upon the question of acceptance and the sufficiency of the evidence to establish it, Judge Dillon, in his excellent work on Municipal Corporations (4th ed., § 636), says that "Where a plat is made and recorded the requisite intention is generally indisputable, but the intention may also be established by parol evidence of acts or declarations which show an assent on the part of the owner of the land that the land should be used for public purposes." A sale of lots with reference to such plat, or describing lots as bounded by

streets, will amount to an immediate and irrevocable dedication of the latter binding upon both vendor and vendee. (Id. § 640; *People v. Loehfelm*, 102 N. Y. 1; *Pomfrey v. Village of Saratoga Springs*, 104 id. 459.)

Acceptance may be express and appear of record, or it may be implied from repairs made and ordered, or knowingly paid for by the municipality which has the legal authority to adopt the street or highway, or from long user by the public.

It seems to me that the evidence clearly establishes that the so-called streets in question have been dedicated by the owners of the soil to the city for highway purposes. Maps were made and certified to by the chief engineer of the department of public works and filed in the assessors' office and registered in the city clerk's office, showing the plots of land that had been subdivided and laid out into city lots, including the streets in question and their names, width and connections with other streets. It also appears that the city recognized them as streets by putting in water pipes and hydrants and constructing sidewalks and grading some of the alleged streets. It is plain from these facts that the strips of land in question were duly laid out and dedicated by the owners of the soil to the municipality for public streets and that they were accepted by the public. It would be a violation of good faith to the public and those who have purchased lots and acquired vested interests with a view to the benefit and use of these alleged streets to permit the original owners of the fee to contend that they had not been dedicated to the public use. We must, therefore, hold that they were exempt from taxation or assessment of any kind, and that the assessors, acting under the authority delegated to them by the city charter, had no legal right to assess them for the improvement of Bailey avenue.

The fourth point raised by the appellant is that the assessment roll was not confirmed within a year after the confirmation of the report of the commissioners awarding compensation to the owners of land taken for the improvement. I am unable to discover any provision of the city charter requiring that the assessment roll shall be confirmed within that period. The provisions of section 435 of the city charter (Chap. 105 of the Laws of 1891), which authorizes the city to borrow money to pay the awards if the roll is not made

and confirmed within a year, show conclusively that the duties imposed upon the common council in this respect are not mandatory, but simply directory. So that the omission to confirm the assessment roll within a year did not invalidate the subsequent proceedings.

We have now noticed all the objections raised by the learned counsel for the appellant, and we do not think any of them furnish a sufficient reason for a reversal of the judgment.

If there were any substantial irregularities in the proceedings of the common council pertaining to the extension of Bailey avenue, the Legislature has legalized them.

Chapter 376, Laws of 1892, provides that "All proceedings, matters and things which were begun, or regarding which any action or preliminary steps had been taken by the city of Buffalo, or its departments, officers, agents or servants prior to the first Monday in January, 1891, are hereby ratified and confirmed."

The resolution of the common council authorizing the assessment which the appellant claims is illegal was adopted on the 19th of January, 1891, and comes within the provisions of the aforesaid act, which legalized the irregularities, if any, in the acts of the officers, agents and servants of the municipality pertaining to all proceedings of the common council in the Bailey avenue extension. (*Cromwell* v. *MacLean*, 123 N. Y. 490; *Tifft* v. *The City of Buffalo*, 82 id. 204; *Matter of Livingston*, 121 id. 98.)

After the passage of the act no taxpayer could successfully resist the payment of his tax on the ground of irregularities existing at the time of its passage.

It was held in *Terrel* v. *Wheeler* (123 N. Y. 76) that the Legislature has power to legalize proceedings to collect taxes where the law has not been strictly pursued in cases where the taxes were not invalid because of a want of jurisdiction to impose them, or where no constitutional right of the taxpayer had been violated.

The judgment of the lower court, therefore, must be affirmed with costs.

LEWIS and BRADLEY, JJ., concurred; WARD, J., not sitting.

Judgment affirmed, with costs.