JAMES M. WINTER ET AL., APPELLANTS, VS. JANE A. PAYNE, ADMINISTRATRIX OF THE ESTATE OF W. L. PAYNE, DECEASED, APPELLEE.

1. Where the owner of a tract of land makes a town plat of it with spaces for roads or streets laid out thereon and conveys lots with reference to, and bounded by such roads or streets, he thereby dedicates the said roads or streets to public use as such, and the grantees in the conveyances acquire the right to have said roads or streets kept open for the benefit of light and air, as well as passage-ways.

2. Where a street, although laid off on a town plat in a certain course, is opened up by the owner on the ground in a course varying from the exact lines as indicated on the plat, and the street as opened up on the ground is thrown open to public use as a street before lots abutting on the same are conveyed by the owner, the descriptions in deeds subsequently made and referring to the street as a boundary will relate to the street as opened up on the ground and used at the time such deeds are executed.

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion of the court.

*W. B. Young* for Appellants.

*R. B. Archibald* for Appellee.

MABRY, J. :

W. L. Payne, appellee's intestate, filed a bill in January, 1887, against appellants, James M. Winter, Robert H. Winter, Teresa O. Sedgwick and husband, William Sedgwick, praying for a mandatory injunction requiring them to remove a certain obstruction in an alleged street mentioned in the bill.

Complainant's case is that some twenty-five years before the filing of the bill, Miles Price, then deceased, was the owner of a certain tract of land known as the Winter tract, situated, at the time of filing the bill, in Brooklyn, a suburb of Jacksonville, Duval county, Florida; that the said Miles Price during the time he owned said tract of land laid it off into lots and blocks, and at convenient distances, as he saw proper, laid out streets through and across said tract of land and named them, and dedicated the said streets to the use of the public; that among the streets so laid out and dedicated by the said Price while he was the sole owner of the land through which they run, was Duval street, which runs from Commercial street to the St. Johns river, between blocks fifteen and twenty-one as designated on LeBaron's map of the city of Jacksonville and its suburbs. Further, that the said Price after he had laid out the "Winter tract" and had dedicated Duval street to the use of the public as a public street, or highway, from Commercial street to the St. Johns river, as alleged, sold lots on each side of said street, and in designating the boundary lines of said lots in deeds conveying them bounded the lots on the southeast side of said street by Duval street on the east or northeast, and also designated said street as the western boundary of lots lying on the east side of the same; that said Price showed to the

purchasers of the lots on the west side of said street, or to some of them, at the time of purchase, where to put their fences so as to conform to the west line of said street, and the fences were located exactly as indicated by Price; that for a period of more than twenty years said street was open to the public and used as a public street, or highway, after it had been so laid off, and during that time the boundaries were well-defined by fences on either side, and its course during the whole of said time had not been changed. That on the 8th day of June, 1868, Miles Price sold and conveyed to James Pence, Lot 8, in Block 15, which lot is bounded on the south by the St. Johns river, and on the east by said Duval street, the deed of conveyance to Pence being attached as exhibit "A" to the bill; that Pence and wife conveyed said lot to Myra Mitchell on August 24th, 1868, this deed being attached as exhibit "B;" that Myra Mitchell and husband conveyed the same lot to complainant W. L. Payne April 14th, 1886, and this deed is made exhibit "C."

It is further alleged that at the time complainant purchased said lot Duval street ran in the same direction, and was located where it had been laid off by Miles Price, and the west side of said street was the eastern boundary of his said lot, and he had no knowledge that it ever was or would be claimed that said street was not in its proper place; that the land on the east side of said Duval street is owned by the defendants jointly, the same having been deeded to them by Miles Price; that sometime in the Fall of 1886 said defendants wrongfully and unlawfully moved their fence which ran along the east side of said street, out into and diagonally across said street in such manner as to entirely cut off complainant from the use of the

same, as indicated by a plat attached as an exhibit to the bill. The placing of said fence across the street is alleged to be a great injury to the whole neighborhood, but the greatest and more special injury done by the said acts of the defendants in obstructing the said street, falls upon complainant, as it deprives him of the use of said street in front of his said lot. and if said fence is allowed to remain, the injury to him will be irreparable, and the value of his said property will be greatly lessened and made comparatively worthless. Also that the action of defendants in thus obstructing the said street was without the consent and contrary to the wishes of the entire neighborhood, and against the protest of complainant; and that since said fence was moved out into and across said street the said Miles Price said that defendants had no business to do so, and that the fence was just where it ought to be before it was moved, and where he authorized it to be placed years ago. The special prayer is that defendants be required to remove the said obstruction, and that they be forever enjoined from moving the fence out into said street or from putting any obstruction across or in the same.

A demurrer to the bill, on the ground that it did not make such a case as entitled complainant to any relief in equity, was overruled and defendants answered. The answer admits that Miles Price owned the "Winter tract" of land, and that during his ownership he laid the same off into lots and blocks and had a plat made. It is alleged that the plat so made was recorded in the public records of Duval county, in Book P, page 379, and that it was the map used by Miles Price in his lifetime and by which he sold all the lots sold by him in Brooklyn, and is the one referred to in the deeds of Pence, Mitchell and complainant, W. L.

Payne, and made exhibits to the bill. A copy of the map is made an exhibit to the answer. It is admitted that among the streets laid out on the map is Duval street, and that it runs between blocks 15 and 21, from Commercial street to St. Johns river, but it is alleged that said street runs as is designated upon said map as recorded, and it is denied that it runs according to LeBaron's map, which, it is alleged, was not made until 1885. The allegations of the bill in reference to platting the "Winter tract," the dedication of Duval street to the use of the public, the sale of lots on said street by Price, and the designation of the boundary lines of the lots sold as alleged, are admitted; but it is alleged that in each of the deeds so made Price referred to the map as recorded, and that he sold the said lots and bounded them as laid out on said map, and used no other map in making sales of said lots. On information and belief it is denied that Price indicated to complainant or his grantors the line of fence as located by them, but he at all times maintained that the fence was not where it should be, or where he told them to put it, and he always maintained that Duval street as laid down on the map used by him in his lifetime, and recorded as aforesaid, indicated the true lines of said street, and that said map indicated correctly where said fence should be placed. The sale to Pence, and from Pence to Mitchell, and from Mitchell to complainant Payne are admitted, but it is alleged that they bought said lot as laid out upon said map, and with the boundaries thereto as therein defined. It is denied that the said Duval street ran in the same direction and was located in the same place when complainant purchased said lot 8, as said street was laid out by Miles Price when platted by him. Defendants alleged that they are the owners of the land on the

east side of said Duval street; that Teresa O. Sedg-wick is owner of part of the premises on the east side of said street during her natural life, with reversion to her sons, James M. and Robert H. Winter, aged 27 and 24 years respectively, and part of said land was deeded to the said James M. and Robert H. Winter in the Fall of 1886, as shown by deed from Miles Price and wife, a copy of which is made an exhibit to the bill; that after the last named purchase from Price, and upon consultation with him, they fenced in the land they bought, and employed the county surveyor to run their west line in accordance with their deeds and the plat of said Price, and after the survey of the county surveyor they placed their fence on the line indicated by him as the correct east line of Duval street, and the fence was then located on the line so laid out by said county sur-veyor. It is denied that said fence is across the street, or in the street, or causes any obstruction to the same, but is upon the correct east line of Duval street, and that if any obstruction exists in said street it is caused by the act of complainant in putting his fence forming the west line of Duval street in the wrong place. Upon in-formation and belief it is denied that Miles Price said that defendants had no business to move their fence out, and that the fence was just where it ought to be before it was moved, and where he authorized it to be placed years ago. It is alleged that when spoken to in reference to the removal of said fence Miles Price said that the fence was never on the right line, and that the place where it had been put was the proper place and in accordance with the map by which he had sold all the lots on said street. Further, that said Duval street was not much used by the public, and no particular attention had ever been paid to the exact

line bounding said street from Commercial street to the St. Johns river, and during these years James M. and Robert H. Winter were infants, and had no present interest in said premises, their interest being reversionary, to take effect upon the death of their mother, but upon examination, finding that the fence forming their western boundary was not on the correct line according to their deed and said map, and upon a survey of the correct line by the county surveyor, they put their fence upon said line, and that it is not in or across said street.

After replication filed and testimony taken, the court decreed in favor of complainant, and that defendants be perpetually restrained from keeping and maintaining any fence or other obstruction upon or across the said Duval street, as the same had been used and defined during the past fifteen or twenty years, and that they be restrained from building or placing any fence enclosing their land described in the bill, upon the southwest side, fronting on Duval street outside of, or beyond where the fence had been located before its removal by defendants in the Fall of 1886.

After the decree was rendered, W. L. Payne died, and the suit was revived in the name of his administratrix, and an appeal taken from the decree entered.

Counsel for appellants insists that the testimony does not sustain the decree, and this is the only question presented for our consideration. In disposing of the case we will confine ourselves to the question presented.

As shown by the pleadings before us, Miles Price owned the "Winter tract" of land, subsequently called Brooklyn, a suburb of the city of Jacksonville, and

laid it off into lots and streets. A map of Brooklyn,
with a recital on it that it was drawn for Miles Price,
was filed with the clerk of the Circuit Court for
Duval county and recorded by him on the 18th day of
December, 1868. Duval street is plainly delineated
on this map, and the figures "33" are marked in it.
On the 8th day of June, 1868, Price and wife sold and
conveyed to James Pence a lot or parcel of land situ-
ated in Duval county, Florida, and described as fol-
lows, *viz :* "being a part of the tract of land situated
near the western end of the city of Jacksonville, known
as the 'Winter tract,' and upon the plan or map of
said tract as lot number (8) eight, in square number
(15) fifteen, and bounded as follows, to-wit: on the
south by the river St. Johns, on the east by Duval
street, on the north by lot number (1) one, and on the
west by lot number (7) seven, all in the aforesaid
square number (15) fifteen, and measuring from north
to south one hundred and thirty-three (133) feet, more
or less, and from east to west one hundred and five
feet." Pence subsequently sold and conveyed this lot
by the same description to Myra Mitchell, and in
April, 1886, Myra Mitchell and husband conveyed it
by the same description to William L. Payne who filed
the bill in this case. The deed to Pence was executed
some six months before the map of Brooklyn referred
to was filed, but the description of the lot conveyed
refers to the map of the "Winter tract," and the lot is
bounded on the east by Duval street. The testimony
of C. C. Collins shows that the map of Brooklyn, as
recorded, was the one used by Miles Price in selling
lots owned by him in that locality. It also appears
from the evidence that before the conveyance to Pence
a street known as Duval street extending through the
"Winter tract" was in use by the public, and that a

house and fence had been constructed on the Pence lot west of this street. The fence, it appears, ran immediately west of the street and parallel with it. This is a sufficient showing that Price dedicated the said street as a public highway. Where the owner of a tract of land makes a town plat of it with spaces indicating the dedication of roads or streets, and conveys lots with reference to, and bounded by said roads or streets, he thereby dedicates them to public use, and the grantees in such deeds acquire the right to have them kept open in front of their lots for the benefit of light and air, as well as a passage way. Kittle vs. Pfeiffer, 22 Cal., 485; Rowan vs. Town of Portland, 8 B. Monroe, 232; Livingston vs. Mayor of New York, 8 Wend., 85, 22 Am. Dec., 622; Davis vs. Judge, 46 Vermont 655; 2 Wait's A. & D., 712, sec. 6; Guthrie vs. Town of New Haven, 31 Conn., 308. It is not questioned by either party that Duval street was dedicated by Price to the public as a street, but the contention arises over the proper location of the street. Appellants insist that Duval street runs at right angles with Commercial street from the latter to the St. Johns river, and that, according to this course, the fence in question would not be in the street. Before building this fence, which extends diagonally across Duval street, as it had been used for many years prior thereto, appellants had the county surveyor to run out Duval street according to the recorded map of Brooklyn, and by this survey the fence would not be in the street. For appellee it is contended that long before the Winters purchased, Duval street had been laid out with a well defined course from Commercial street to the St. Johns river, and as laid out had been dedicated to the public by Miles Price, and it had also during said time been

recognized and used by the public and the adjoining lot owners as a public street, and that the fence erected by appellants extended diagonally across said street as thus laid out and dedicated. The decree on the testimony was in favor of complainant below, and our conclusion is that it must be affirmed. It may be admitted that where an owner by a town plat lays off a tract of land into lots bounded by streets, and sells the lots by descriptions bounding on the streets, in the absence of any opening or tracing of the street on the ground before deeds made, the plat will control the course of the street. But while this proposition may be correct, it is also true that where a deed calls for a line of a street, as a monument, the line of the street as it is opened and built upon at the time will be held to be the line intended. DeVeney vs. Gallagher, 20 N. J. L., 33; Den d. Haring vs. Van Houten, 22 N. J. L., 61; Jackson vs. Perrine, 35 N. J. L., 137; O'Brien vs. King, 49 N. J. L., 79; Tebbetts vs. Estes, 52 Maine, 566; Falls Village Water Power Co. vs. Tibbetts, 31 Conn., 165; Fisher vs. Bennehoff, 121 Ill., 426; Angell on Highways, sec. 149. The application of this rule to the testimony before us will result in the affirmance of the decree. In 1868 Price sold to Pence Lot 8 in Block 15, bounded on the east by Duval street, and in 1871, it appears that Price sold all the land north of the Pence lot to Commercial street, and bounded on the east by Duval street, to William A. Jones who located his west fence along Duval street as directed by Price. The fence erected by Jones connected south on Duval street with the fence in front of the Pence lot and in line with it. The two fences mentioned were parallel with and along the entire west side of Duval street from Commercial street to the river as it had been used by the public certainly

since 1867, a period antedating the conveyance to
Pence. Price gave specific directions where Jones
should locate his west fence with reference to Duval
street, and informed Jones that this street was located
where it should be. A wharf was located at the foot
of Duval street, and. it is certain that the public used
it as a public road going to and from the wharf before
Price sold any lots bordering on it.

Price made two deeds to the Winters: the first was.
made on the 28th day of February, 1876, to Teresa O.
Winter (now Sedgwick), and the second one was made
to James M. and Robert H. Winter on the 10th day of
July, 1886, a short time before the fence in question
was erected. At the time of the conveyance to Mrs. Win-
ter, as appears from what has been stated, Price had
sold all the abutting lots on the west side of Duval street
and this side of that street as then used, and as it had
been used for a long time prior thereto, was bounded
by a fence. The property conveyed to the Winters is.
situated on the east side of Duval street, and it is.
shown, we think, that at the time of the first convey-
ance to Mrs. Winter, Duval street, from Commercial
street to the river, was opened and built upon as a
public street of the dimensions and shape as claimed
by complainant. The house on the Pence lot, as shown
by the testimony of the county surveyor, would be in
the street as laid out by him at the request of appel-
lants, and yet this house was built, as it appears, be-
fore the map was filed. Certainly Pence bought his.
lot before the map was filed. The street as actually
laid off on the ground and opened up will control, and
the descriptions in deeds referring to streets will relate
to the streets as thus located. We do not mean of
course that after an owner has platted a tract of land
and conveyed lots according to such plat, he can there-

after change the location of streets dedicated on the plat, to the detriment of purchasers. But where a street, although laid off on a plat, is opened up and laid off on the ground by the owner in a certain course, it will be deemed the street referred to in deeds bounding lots thereon. Before Price conveyed any lots on Duval street it ran where complainant contended that it did, and the deeds subsequently made to appellants describing lots bounded on Duval street had reference, we think, to the street as located at the time of the execution of such deeds. The right to maintain the street as claimed by complainant does not rest on prescription as insisted on by counsel for appellee. The complainant's case rests upon a dedication of the street by Miles Price, the owner, and not upon a prescriptive right by user, and hence it is not necessary to discuss what are the essentials of such a right.

There is considerable testimony in the record as to what Price said about the location of the street after the fence had been erected across it in 1886. Objections were noted to this testimony before the master, but it does not appear that such objections were urged or insisted on before the chancellor at or before the trial. Counsel for appellants insist that this testimony is incompetent, as Price had no right to bind them by his declarations after their rights were acquired. In reaching the conclusion we have, no importance has been given to the recent statements of Price in reference to the location of the street, but what he did and said in reference to the location of the street while he was the owner and before conveying to the Winters has been considered. In disposing of the

case on the point presented we have treated, as counsel for appellants has done, the remedy as being proper.

The decree must be affirmed, and it is so ordered.