[No. 15742.   Department One.—June 4, 1895.]

A. DEMARTINI et al., Respondents, v. CITY AND COUNTY OF SAN FRANCISCO et al., Appellants.

Streets — Opening by Street Superintendent — Injunction by Lotowner—Evidence of Title—Possession—Burden of Proof.—In an action by a lotowner to enjoin the superintendent of streets from removing the improvements from his lot and opening it up for a public street it is not necessary that the plaintiff, in order to maintain the action, should establish title in fee, but it is only necessary to show actual possession of the lot at the time of bringing the suit, and such possession is presumptive evidence of title, and it is incumbent on the defendants to show a right to open up the street in order to defeat the action.

Id.—Findings—Dedication of Land for Street—Sufficiency of Evidence.—Where the court finds that the street sought to be opened had never been more than a *cul-de-sac*, and never extended across the plaintiff's lot, no part of which had ever been dedicated, accepted, or used as a public street or highway, and the evidence tends to show that whatever user there was of plaintiff's lot by the public was a mere sufferance

or permissive use by the owners of the fee, and there is no evidence of unequivocal intent by the owners to dedicate the land to public use, the finding will not be disturbed upon appeal.

ID.—EFFECT OF USER—INTENTION TO DEDICATE.—While user may be sufficient to show an acceptance by the public of an offer to dedicate, it is not sufficient of itself to establish dedication by the owner, except it appear clearly that such user was with the knowledge and consent of the owner, or without his objection, and under such circumstances as fairly to give rise to the presumption that the owner intended to dedicate to such use.

ID.—OFFICIAL MAPS OF CITY—DESCRIPTION OF STREET.—The fact that the street in dispute appears to have been laid down upon the engineer's map and other official maps of the city, as a part of a street or alley, raises no conclusive presumption that the land has become a public street either by dedication or otherwise, where it appears that the land was not a part of one of the originally reserved streets, but came to private ownership under an alcalde grant, and that at and before the time when the maps were made and filed the premises were fenced, and have never been open to use as a street.

ID.—RIGHT TO TAKE PRIVATE LAND FOR PUBLIC STREET—DEDICATION.— Where land is held in private ownership the right to take it as a public street depends upon whether the land has been dedicated as such.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial.

The facts are stated in the opinion of the court.

*City and County Attorney Harry T. Creswell*, and *A. Heynemann*, for Appellants.

No one can acquire by adverse possession the right to obstruct a street. (*Hoadley* v. *San Francisco*, 50 Cal. 265; *City of Visalia* v. *Jacob*, 65 Cal. 434; 52 Am. Rep. 303; *San Leandro* v. *Le Breton*, 72 Cal. 170, 177; *County of Yolo* v. *Barney*, 79 Cal. 379; 12 Am. St. Rep. 152; *Ex parte Taylor*, 87 Cal. 91.) A dedication of the street is sufficiently shown. (*Smith* v. *San Luis Obispo*, 95 Cal. 463; *People* v. *Eel River etc. R. R. Co.*, 98 Cal. 666; *Hargro* v. *Hodgdon*, 89 Cal. 624; *People* v. *Hibernia Savings & Loan Soc.*, 84 Cal. 634; *City of Eureka* v. *Armstrong*, 83 Cal. 623; *People* v. *Reed*, 81 Cal. 77, 78; 15 Am. St. Rep. 22; *People* v. *Pope*, 53 Cal. 437; *Hoadley* v. *San Francisco, supra; San Francisco* v. *Sullivan*, 50 Cal. 603; *City of Visalia* v. *Jacob, supra; Ex parte Taylor*,

*supra; City of Napa* v. *Howland,* 87 Cal. 84; *People* v. *Beaudry,* 91 Cal. 213; *Quinn* v. *Anderson,* 70 Cal. 455; *Harding* v. *Jasper,* 14 Cal. 649.)

*Tilden & Tilden,* for Respondents.

Dedication is a question of fact, and the court will not disturb the finding if there is any evidence to support it. (*People* v. *Dreher,* 101 Cal. 271.) The intention of the owner to dedicate is essential. (*San Francisco* v. *Canavan,* 42 Cal. 554; *Quinn* v. *Anderson,* 70 Cal. 456; *Commonwealth* v. *Newbury,* 2 Pick. 51; *Holdane* v. *Trustees etc.,* 21 N. Y. 474–77; *Poole* v. *Huskinson,* 11 Mees. & W. 827; *Hihn* v. *Spreckels,* 59 Cal. 315; *City of Eureka* v. *Croghan,* 81 Cal. 524–26; *Huffman* v. *Hall,* 102 Cal. 26; *People* v. *Dreher, supra; City of Monterey* v. *Malarin,* 99 Cal. 290.) The fact that streets are laid down upon official maps does not constitute them public streets. (*People* v. *Noble* (Cal., June, 1883), 11 Pac. C. L. J. 501; *Stallard* v. *Cushing,* 76 Cal. 472; *Whelan* v. *Boyd,* 93 Cal. 500; *People* v. *Beaudry,* 91 Cal. 213; *Cook* v. *Sudden,* 94 Cal. 443.) User does not prove dedication where the intent to dedicate is wanting. (*Shellhouse* v. *State,* 110 Ind. 509; *Brinck* v. *Collier,* 56 Mo. 160; *Hemingway* v. *Chicago,* 60 Ill. 324; *Illinois Ins. Co.* v. *Littlefield,* 67 Ill. 368; *Hall* v. *McLoud,* 2 Met. (Ky.) 104; 74 Am. Dec. 400; *State* v. *Tucker,* 36 Iowa, 487; *Kelly* v. *Chicago,* 48 Ill. 388; *State* v. *McCabe,* 74 Wis. 481; *Speir* v. *New Utrecht,* 121 N. Y. 420.) Proof of plaintiff's possession was sufficient, without proof of title in fee. (*Tate* v. *City of Sacramento,* 50 Cal. 242; *Hayward* v. *Manzer,* 70 Cal. 476; *Hawxhurst* v. *Lander,* 28 Cal. 332.) There has been no user for thirty years, and any easement was lost by nonuser. (Washburn on Easements, 551; *Corning* v. *Gould,* 16 Wend. 535; *Shelby* v. *State,* 10 Humph. 165; *Hillary* v. *Waller,* 12 Ves. 265; *Baldwin* v. *City of Buffalo,* 29 Barb. 396; *Farrar* v. *Cooper,* 34 Me. 400; 2 Smith's Leading Cases, *211; *Levee Dist. No. 9* v. *Farmer,* 101 Cal. 178–86; *Schmitt* v. *San Francisco,* 100 Cal. 302.)

Van Fleet, J. — Plaintiffs brought this action to enjoin the superintendent of streets of the city and county of San Francisco from removing the improvements from, and opening up as a public street, a certain strip of land in said city and county. Plaintiffs had judgment in the court below. The defendants moved for a new trial, which was denied, and they appeal from the order upon a statement of the case.

Fifty vara lots numbered 38 and 14 are situated in the block or square of said city and county, lying between Broadway and Pacific, and Kearny and Montgomery streets. Lot 38 is a rectangle, situated on the northwesterly corner of the block, with a front of one hundred and thirty-seven and one-half feet on Broadway, and a like extent on Kearny. Lot 14 lies immediately to the east of and adjoining lot 38, with the same frontage on Broadway as the last-named lot, and running back southerly to an equal depth. The plaintiffs claim to be the owners and in possession of that portion of fifty vara lot 14, lying adjacent to lot 38 on the east, having a front of fifty-nine feet and nine inches on Broadway, and running back the full depth of one hundred and thirty-seven and one-half feet. Commencing at Kearny street, and running along and upon the most southerly part of said fifty vara lot 38, is a narrow alley or street, known as St. Charles street, some seventeen and one-half feet wide, which is opened up the full depth of said lot 38; while running from Broadway, and on the entire easterly line of that part of lot 14 above described, as claimed by plaintiffs, is an alley fourteen feet wide, known as Rowland alley. The land in dispute is a strip seventeen and one-half feet wide and about fifty-nine feet and nine inches long on the southerly end of plaintiff's lot, as now claimed by them, and which, if thrown open, would extend St. Charles street or alley, so as to connect it with Rowland alley.

The claim of the defendants is that the premises in dispute comprise and constitute a part of St. Charles

street, and is a public way, made so by dedication of the owners thereof and acceptance by the public. The plaintiffs claim, to the contrary, that the land in dispute never was dedicated or opened as a street, and has never been open to public use or travel; that St. Charles street is a *cul-de-sac,* which never at any time extended across any portion of said lot 14, but terminated at the easterly line of lot 38.

The court below found: "1. That the plaintiffs are and have been in possession of all of the land and premises described in the complaint, claiming title thereto ever since the month of July, 1884, and that the possession of said lot of land has been held by the predecessors of the plaintiffs ever since prior to the year 1865; and that there are and have been for many years improvements upon all of said premises, which improvements are the property of plaintiffs.

"2. That St. Charles street, mentioned and described in the complaint, does not extend easterly from or beyond the easterly line of fifty vara lot 38, and said St. Charles street does not pass across, along, or upon any portion of fifty vara lot No. 14, and that no part of the land described in the complaint has ever been dedicated or accepted, or used as a public street or highway, and no part thereof is a public street."

The main contention in the case is that these findings are not supported by the evidence, but from a careful examination of the evidence we think this claim cannot be maintained. As to the first finding, there is in fact no substantial conflict in the evidence, and the lower court would not have been warranted in a conclusion contrary to that reached. Counsel's position with reference to this finding would seem to be substantially the same as that pressed upon his motion for a nonsuit —that it was essential for plaintiffs, in order to maintain their action, to establish title in fee in themselves. In this view counsel is mistaken. It was only necessary for that purpose that plaintiffs show actual occupation or possession at the time of bringing the suit. This

being presumptive evidence of title, it was incumbent
upon the defendants to show a better right in order to
defeat the action.   In *Tate* v. *Sacramento*, 50 Cal. 242,
it is said: "At the commencement of the action the
plaintiff was and for many years had been in the actual
occupation of the premises in controversy.   His posses-
sion was *prima facie* evidence of title, and must be pre-
sumed to have been rightful until the contrary appear.
But the defendant contends that the land on which the
plaintiffs' building stands constitutes a part of Third
street, north of I street, and that the buildings are a
nuisance, which the city authorities may lawfully re-
move.   In support of this claim it was incumbent on
the defendant to show affirmatively that Third street,
north of I street, had been dedicated as a public street."

The evidence shows, as suggested, without substantial
conflict, that, as found by the court, plaintiffs and their
predecessors have been in possession of the premises,
under claim of title, for more than twenty years.

As to the second finding there is not only a substan-
tial conflict in the evidence upon which it rests, but we
think it clearly preponderates in favor of the facts as
found by the court.   The evidence shows that the alley
now known as St. Charles street, but which at different
times has been known as "St. Charles place," and some-
times as "St. Charles alley," had been from early in
the "fifties" used by the residents on that block and in
that neighborhood as a convenient way between their
homes and places of business.   During these early
years that portion of the city was not thickly settled,
and the district being hilly it was the habit of the resi-
dents to go upon trails or paths wherever it was most
convenient to travel, without reference to established
streets.   At this time, at least down to 1854, there were
no houses on lot 14.   In 1856 Mr. Fiske, who owned
the part of fifty vara lot 38 across which St. Charles
street runs, fenced up the street, but the owners on the
south of the alley paid him for one-half of the width,
and he again opened it; and in January, 1857, an

agreement was entered into by those owning fifty vara lot 38, by which it was declared that the strip of land now known as St. Charles street "shall remain subject to our disposition, and under our control for our mutual use and benefit." At that time Mrs. Jane Rowland owned the portion of fifty vara lot number 14, now owned by plaintiffs, including the land in dispute, and, as Broadway was not then cut through or graded, Mrs. Rowland asked and was granted permission to use St. Charles alley or street as a way to get to and from her lot, and a fence which Mr. Fiske had erected on the line between lots 38 and 14 was removed for that purpose. This left a way open for people to go from Kearny street, by way of St. Charles street, across lots and through to Montgomery street, as had been their habit before the fences were put up. Subsequently, however, when Broadway was opened and graded, and the people on lot 14 could get out that way, they opened by agreement among themselves a private way, now called Rowland alley, and used that as a means of ingress and egress to and from their homes. This was about 1863–64, and thereupon Mrs. Rowland herself put up a fence on the line between lots 38 and 14, where it had formerly been established by Mr. Fiske, and fenced the strip of land now in dispute off from its connection with St. Charles street or alley. This fence has, with one or two short interruptions, remained to the present time, confining St. Charles street to a *cul-de-sac*, extending only across lot 38. In putting up this fence Mrs. Rowland left a gate for foot passengers from her lot into St. Charles street, and for some years people in the neighborhood, and tradesmen administering to their wants, and perhaps others, were accustomed to use this gate as a means of getting from St. Charles street to Rowland alley, and thence to Broadway, and also in going through by way of St. Charles street to Montgomery Place and Montgomery street. The evidence is quite conflicting as to the extent to which travel was wont to go across the disputed land during any of the period

mentioned, but it very clearly tends to show that what-
ever user there was by the public was a mere sufferance
or permissive use by the owners of the fee.   This is
largely true, also, as to St. Charles street as now opened,
and likewise of Rowland alley.   It is very doubtful if,
under the evidence, those alleys can be regarded as
other than private ways, opened by the consent, and for
the use and convenience, of the contiguous owners, and
as not intended as public streets.   Certainly, as to the
land in question, while there is evidence of its use by
the public at different times in the manner we have
stated, there is no evidence of such unequivocal intent
by the owners to dedicate to such use as would warrant
us in overturning the finding to the contrary.

" To constitute a valid and complete dedication two
things must concur, to wit: An *intention* by the owner,
clearly indicated by his words or acts, to dedicate the
lands to public use, *and* an *acceptance* by the public
of the dedication." (*San Francisco* v. *Canavan*, 42 Cal.
554.)

" Dedication is never to be presumed without evi-
dence of an unequivocal intention on the part of the
owner." (*Quinn* v. *Anderson*, 70 Cal. 456.) While
user may be sufficient to show an acceptance by the
public of an offer to dedicate, it is not sufficient of itself
to establish dedication by the owner, except it appear
clearly that such user was with the knowledge and con-
sent of the latter, or without his objection, and under
such circumstances as to fairly give rise to the presump-
tion that the owner intended to dedicate to such use.

The appellants claim that Mrs. Rowland in 1856, in
a declaration or schedule filed of her separate property,
recognized St. Charles street or alley, as then existing
across lot 14, and some stress is laid upon this fact as
an evidence upon her part of dedication.   But the de-
scription of her lot in that schedule shows that Mrs.
Rowland did not regard or recognize St. Charles street
as crossing her lot, but as running along its southern
boundary.   She describes her lot as beginning on the

*northerly* line of St. Charles street, and running northerly to Broadway, one hundred and thirty-seven and one-half feet, showing that she then supposed the street to exist entirely without the limits of lot 14. And all her other acts at about the same time, and ever subsequently, show clearly that she did not regard the street as crossing her lot.

Much stress is also laid upon the fact that, upon the engineer's map and other official maps of the city, the strip in dispute appears to have been laid down as a part of St. Charles street or alley; but this of itself raises no conclusive presumption that the land has become a public street, either by dedication or otherwise. Where, as here, the land was not a part of one of the originally reserved streets, but came to private ownership under an alcalde grant, the right to take it as a public street depends upon whether it has been dedicated as such. (*Whelan* v. *Boyd*, 93 Cal. 500.) The evidence shows that at and before the time those maps were made and filed these premises were fenced, and have never since been opened to use as a street.

The order is affirmed.

HARRISON, J., and GAROUTTE, J., concurred.