LONDON & SAN FRANCISCO BANK, Limited, v. CITY OF OAKLAND et al.

(Circuit Court of Appeals, Ninth Circuit.     October 3, 1898.)

No. 444.

1. DEDICATION OF STREETS—FILING OF PLAT.
    A map or plat of a town signed and acknowledged by the owners of
    the land, and duly filed and recorded, and by reference to which such
    owners partitioned the property by deeds between themselves, constitutes

a dedication to the public of the streets shown thereon; and it is immaterial by whom or for what purpose the map was originally made.

2. SAME—EVIDENCE OF INTENTION.

An intention to dedicate, while it must be clearly shown, need not be proven by direct and positive testimony, but is to be determined upon the peculiar facts and circumstances of the particular case, and may be inferred therefrom. It is more readily inferred in the case of a street in a town or city than a country road.

3. SAME—ACCEPTANCE OF DEDICATION—ACTION OF MUNICIPAL AUTHORITIES.

A municipal ordinance declaring certain named streets as shown on a designated plat to be public streets, and ordering them opened as such, constitutes an acceptance of the dedication of such streets by the plat.

4. SAME—ACCEPTANCE BY USER OF PORTION OF STREET.

User by the public of a portion of a street dedicated as such by the owner of the land is an acceptance of the dedication as to the entire street, to be used when occasion requires.

5. SAME—EFFECT OF NONUSER.

Nonuser for 40 years of a portion of a street dedicated as such by the owners, and accepted by the municipal authorities, the other portion having been used during all that time, does not devest the public of the right to open and use the nonused portion whenever the exigencies of travel require it.

6. SAME—ADVERSE POSSESSION OF STREET—MAKING OF IMPROVEMENTS.

Where the rule prevails, as in California, that the right to obstruct a street dedicated to, and accepted for, public use cannot be acquired by adverse possession, such a dedication and acceptance are irrevocable; and neither length of possession taken thereafter, nor the making of valuable improvements thereon by the dedicator or others claiming through him, is any defense to the opening and use of such street by the public.

7. SAME—INACCURACY OF MAP.

The fact that a map by which streets were dedicated to public use is inaccurate in its delineation of lands lying outside of the streets and blocks shown thereon does not affect its efficacy as a dedication of the streets thereon designated.

8. SAME—WIDTH OF STREET.

The fact that a map of a town by which a street was dedicated shows the line of a marsh; which was the boundary of the tract platted, to be at one point within a less distance from the adjoining block than the width of the street through the remainder of its length, does not invalidate the dedication of the street to its full width, where in fact the line of the marsh was at a greater distance.

Appeal from the Circuit Court of the United States for the Northern District of California.

For opinion of circuit court, see 86 Fed. 30.

Suit in equity to quiet title to certain lands, and to enjoin the city of Oakland (which claims that the land in question has been dedicated as a public street known as "Fallon Street") from interfering with the same.

The suit was tried upon the following stipulation as to the facts:

"It is hereby stipulated in the above-entitled action that the following facts are admitted to be true, and proof of the same is hereby waived: That complainant was incorporated as averred in its bill; that the map mentioned in respondents' answer was filed and recorded by the persons from whom complainant deraigns title, and who were the owners in common of a tract of land embracing the land in controversy and the other lands shown on said map, on September 2, 1853, and that the copy attached to the answer, and marked 'Exhibit A,' is a full, true, and correct copy of said map; that the

Rancho De San Antonio was granted by the Spanish governor of California, in 1820, to one Luis Peralta, who divided it among his sons, to one of whom (Vicente Peralta) he allotted the land bounded on the west by the Bay of San Francisco, on the south and east by the Estuary of San Antonio (designated on the Kellersberger map as 'Bay of Contra Costa' and 'Bayou'), and on the north by line extending from the Bay of San Francisco to said estuary, and lying north of the most northern tier of blocks shown on said Kellersberger map; that the claim of Vicente Peralta to said land was confirmed in 1854 by the board of commissioners appointed by act of congress to inquire into California land grants of Spanish or Mexican origin, and, on appeal to the United States district court, said confirmation was affirmed, in 1855, and the supreme court of the United States, in U. S. v. Peralta, 19 How. 343, affirmed said decision, and patent accordingly has issued from the United States conveying and confirming said lands to the successors in interest of Vicente Peralta; that, at the date of filing said Kellersberger map, the owners signing the same (who had succeeded to all the rights of Vicente Peralta in all said lands so allotted to him) owned a tract of land embracing all the lands laid off in blocks by the Kellersberger map, and all the lands surrounding the portion so subdivided into blocks, and extending therefrom to said exterior boundaries of the Vicente Peralta allotment; that said exterior strip or margin was not partitioned by said partition deed, but remained in undivided and common ownership for upward of ten years thereafter, unless the court shall hold that the premises in controversy were dedicated by said map to the public as a portion of Fallon street; that said map was made by said owners for the purpose of a partition and allotment of the blocks thereon laid down amongst themselves, and on the said 15th day of August, 1853, simultaneously with the filing of said map for record, said owners made partition of said blocks, allotting the same amongst themselves by the numbers and designations of the various blocks thereof as laid down, numbered, and designated upon said map, and executed amongst themselves reciprocally a deed of partition, whereby block 166 (but not the lands in controversy) was allotted and conveyed in severalty to John C. Hays and John Caperton, two of said owners; and the title of the complainant in this suit to the land in controversy is derived from said tenants in common by conveyances executed by them subsequently to said partition deed; the title to said block 166 is vested in other persons, not parties to this action, who hold the same under conveyances executed by said Hays and Caperton; that, after said partition was made, the respective parties thereto sold and conveyed the lands in their respective allotments to various persons, and from time to time, describing the parcels in the conveyances executed by them by the numbers and description thereof as shown upon said map, and referring to said map by its title of 'Kellersberger's Map of Oakland' for particularity of description; that about the year 1855, and at all times since, the land in controversy in this action was and is inclosed by substantial fence, and since 1858 it has been occupied as a residence; that the land claimed by respondents' answer to be a portion of Fallon street adjacent to complainant's property has never been actually opened or used as a street; but that other portions of Fallon street, to wit, from Sixth street to Eighth street, inclusive, have been for many years so opened and used by the public under the dedication made by the deed of partition and the said map; that the premises are now improved as stated in complainant's complaint, and are of the value therein stated; that the board of trustees of the town of Oakland, on the 27th day of August, 1853, passed and adopted an ordinance, of which a copy is hereto annexed, marked 'Exhibit B'; that the streets running north and south as laid down on said map, including Fallon street, are 80 feet wide; but the complainant does not admit the respondents' contention that by the facts hereinbefore set forth, or by any other facts, Fallon street extends further north than Tenth street. It is further stipulated that evidence may be introduced at the trial by either party as to matters not covered by the facts hereinbefore recited, and that such evidence may be taken orally instead of by deposition."

The following is the map referred to as "Exhibit A":

## A COMPLETE MAP

RESPECTFULLY DEDICATED TO

By J. Kellersberger,

# OF OAKLAND.

## THE CITIZENS OF OAKLAND,

Surveyor.

Exhibit B reads as follows:

"An Ordinance Declaring the Streets in the Town of Oakland Public Highways.

"The board of trustees of the town of Oakland do ordain and resolve as follows:

"Section 1. The following streets in the town of Oakland as laid down and described on Kellersberger's map of Oakland are hereby declared public streets and highways, to wit: West street, Brush street, Castro street, Grove street, Jefferson street, Clay street, Washington street, Broadway, Franklin street, Webster street, Harrison street, Alice street, Jackson street, Julia street, and Oak street; said streets are 80 feet wide, except Broadway, which is one hundred and ten feet wide, and all run in direct line from high-water mark to a line two hundred feet north of the northern line of 13th street. Also the following named and described streets: Second street, Third street, Fourth street, Fifth street, Sixth street, Seventh street, Eighth street, Ninth street, Tenth street, Eleventh street, Twelfth street, and Thirteenth street, all of which said streets are eighty feet wide, and extend from high-tide line of the San Antonio creek to a line two hundred feet westerly from the western line of West street. Also so much of First or Front street, and so much of Fallon street, as are above high-water mark.

"Sec. 2. It shall not be lawful for any person to fence across said streets, or to erect buildings therein, or in any way to obstruct the free passage of said streets, or of any one of them. Any violation of this ordinance shall be punished by fine of not less than forty dollars nor more than one hundred dollars.

"Sec. 3. It shall be the duty of the marshal to remove any and all obstructions placed in the streets contrary to the provisions of this ordinance, and for this purpose he may proceed without warrant or process to remove the same.

"Passed August 27, 1853.

"[Signed]      A. W. Barrell, President of Board of Trustees.
"[Signed]      A. S. Hurlbutt, Clerk of the Board of Trustees."

Page, McCutchen & Eells, for appellant.
W. A. Dow, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. This is a suit in equity to enjoin the city of Oakland and its officers from entering upon land claimed by complainant, and interfering with its possession thereof, or from removing therefrom any of the buildings, fences, trees, or shrubbery thereon, and from using, or attempting to use, the same as a public street; and to quiet the title of complainant to the land. The defendants claim in their answer that the land in question has been dedicated as a public street, known as "Fallon Street," of the city of Oakland. Some testimony was given at the trial in addition to the facts stipulated by counsel. The controlling questions for our decision are (1) whether the lands specifically described in the bill were dedicated to public use as a street by Kellersberger's map; and (2) if dedicated, whether such dedication was accepted by the city before any revocation of the dedication.

1. The general principles applicable to this case are clearly enunciated in 5 Am. & Eng. Enc. Law, 400, as follows:

"The question whether land has been dedicated to public use is one of intent. No particular form is necessary to make a dedication. A grant is not

required.   It may be made by parol, and proved by parol.   All that is necessary is the assent of the owner, and the fact that it has been used by the public. The intention to dedicate is absolutely essential, and it should clearly and satisfactorily appear.   Animus dedicandi is the vital principle;   and time, though often material, is not an essential ingredient.   It is not essential that the legal title should pass out of the owner, nor that there should be any grant of the use or easement to take the fee;   nor is a deed or writing necessary to constitute a valid dedication;   nor is any specific length of possession required.   As against the original owner, the intent to dedicate must be made clear;   and this intention is to be gathered from acts and declarations explanatory thereof, in connection with all the circumstances which surround and throw light upon the subject in each particular case."   City of San Francisco v. Canavan, 42 Cal. 541, 554;   Quinn v. Anderson, 70 Cal. 454, 456, 11 Pac. 746;   Cerf v. Pfleging, 94 Cal. 131, 134, 29 Pac. 417;   Demartini v. City and County of San Francisco, 107 Cal. 402, 409, 40 Pac. 496;   Buntin v. City of Danville, 93 Va. 200, 204, 24 S. E. 830.

Applying these principles to the particular facts, circumstances, and conditions of the present case, we are of opinion that the dedication of Fallon street to the public is clearly shown.   The suggestion that the Kellersberger map does not indicate an unequivocal intention of dedication, because it was not drawn up or prepared by the parties, is, in connection with the circumstances disclosed by the evidence, without merit.   It appears upon the face of the map, on the margin of the plot showing the blocks and streets, that:

"This is the map of the plot of the town of Oakland, as surveyed by the squatters referred to in the deed of partition between Joseph K. Irving, of the first, John C. Hays & John Caperton, of the second, part, and Anna R. Poole, Joseph S. Lyons & Catherine S., his wife, & Alexander A. Young & Serena S., his wife, bearing date August 15th, 1853."

The partitioners signed the same by their attorney in fact, and he acknowledged the same before a proper officer.   The map was duly filed and recorded.   The deeds of partition made express reference to it.   It has always been considered and treated as the official map of Oakland.   The blocks are numbered, and the streets are named. What more is required?   What difference does it make, under such circumstances, whether the map was made by the squatters, or by the partitioners, or for what purpose it was originally made?   The partitioners adopted it, and they and all parties claiming under them should be held and bound by it.   They referred to it and made it a part of their deeds of partition.

In People v. Blake, 60 Cal. 497, 505, McKee, J., speaking with reference to this map, said:

"Now, when the original owners of the land made the Kellersberger map, or, which is equivalent to the same thing, adopted and had recorded the map made by the original squatters, they thereby dedicated to the public use all the streets and public squares to the extent as designated on the map."

The cases relied upon by appellant are not applicable to the evidence in this case.   In People v. Reed, 81 Cal. 70, 22 Pac. 474, the map relied upon to show a dedication was never recorded.   No purchaser had ever seen the map, and the case rested upon the map alone.   The facts in Phillips v. Day, 82 Cal. 24, 22 Pac. 976, and Cerf v. Pfleging, 94 Cal. 131, 29 Pac. 417, were substantially the same. In City of Eureka v. Fay, 107 Cal. 166, 40 Pac. 235, the party sought to be bound had nothing to do with the map, and had expressly re-

fused to be bound by it, and had, in fact, prevented the map from being placed on record.

Appellant claims that the map upon its face fails to show that any part of Fallon street north of Tenth street was dedicated to the public because the letters "St." on all the other dedicated streets appear on the map on a line between Eleventh street and Twelfth street, whereas on Fallon street the letters "St." are placed on a line between Ninth and Tenth streets; and that, inasmuch as there was an open space on the line between Eleventh and Twelfth streets where the letters could have been placed, it must be taken as clear evidence that it was not the intention to dedicate that strip of land as a street. And in this connection it is argued by counsel that no dedication is clearly shown, because the portion of Fallon street upon which appellant's buildings were erected and improvements made was not used as a street; and the principle is sought to be invoked that where an owner plainly marks out a street for several blocks, and does not mark it out any further, he should not be held to have given the right any further than he has marked it.    We are unable to agree with these views.    On the other hand, we understand the law to be well settled that where a person makes or adopts a plot, and records it, and there is any space upon it that does not constitute any part of the platted blocks, he necessarily dedicates such space to a public use.    In the present case the map shows the vacant ground, and all the circumstances tend clearly to show the intent that Fallon street should be extended when the necessities or exigencies of the situation required it.

As to the necessity of the continuation of this street, the circuit court said:

"An examination of the map itself shows the necessity of an unobstructed highway to Twelfth street.    Almost at the junction of Fallon and Twelfth streets, assuming that Fallon street were fully opened up, is the Twelfth Street Bridge, which affords the means of crossing the 'Bayou,' so called, at that time.    This bridge was in existence in 1853, when the partition of the land was made and the Kellersberger map filed for record.    Opening up Fallon street between Eleventh and Twelfth streets, thereby passing over the land in dispute, would give the public traveling up (northward) on Fallon street a direct access to this bridge; otherwise, it would be necessary to go up Oak street, one block further away."  86 Fed. 30, 34.

When it is said that the intention to dedicate must be clearly proven, it is not meant that the testimony must be direct and positive upon this point, and that no inference of facts can be drawn therefrom.    Every case depends upon its own peculiar facts and circumstances, and must, of course, be determined upon its own conditions and surroundings.    The situation of the strip of land in connection with the contiguous blocks as plotted out upon the map, the conduct of the parties at the time the map was made or adopted, the recording of it, and acting upon it, and references made by the owners of the land in their deeds of partition, are all to be weighed and considered, and the court has the undoubted right to draw such inferences therefrom as the established facts may warrant.    This is fully shown and clearly stated in Quinn v. Anderson, supra:

"Dedication is never to be presumed without evidence of an unequivocal intention on the part of the owner.  * * *  This intention may be inferred,

however, by any acts on his part which satisfy the mind of the existence of the intent, and the character of the acts requisite will depend very much upon the situation of the land over which the way is claimed, its surroundings, uses, and a variety of other circumstances tending to illustrate the intent. * * * Stronger evidence is required of the dedication of a neighborhood or timber road than of a thoroughfare (Onstott v. Murray, 22 Iowa, 457); and in case of a country road than of a street in a town or city (Harding v. Jasper, 14 Cal. 649)."

In Rowan v. Town of Portland, 8 B. Mon. 232, 246, the court, in discussing the fact of the absence of any written words on the slip between the street and the river, which it was claimed indicated that it was not dedicated to the public use, among many other things applicable to this case, said:

"We do not understand any of the cases as requiring that words shall be upon the map or plan of a town, expressing the objects and purposes of the different spaces and divisions appearing on its face. * * * When, from the position and relations of any open space in the town, it is apparent that it was intended to be public property, or for the public use, the dedication of such space to the public is as perfect as if the name or purpose were indicated by a written word."

In Hanson v. Eastman, 21 Minn. 509, speaking of the map, which it held clearly showed a dedication of First street across the vacant space, as well as within the lines marked on the map, the court said:

"The facts that this part of the triangular tract is left open, that it appears as a continuation of First street, that it affords the only street access to lots 7 and 8, block 116, leave no room for reasonable doubt that the intention expressed on the plat is to designate and dedicate the same as a public street."

In Warden v. Blakley, 32 Wis. 690, which in its facts, so far as the map is concerned, bears a close resemblance to the facts of this case, the court said:

"We think it perfectly clear upon the face of the plat itself, offered in evidence, that Alice street extends along the south side of block 20, and consequently that the locus in quo is a part of one of the public streets of the village of Darlington. The argument of the counsel for the respondent in support of this construction of the plat is unanswerable. The subdivision of the lots in block 20 shows that it was the intention of the original proprietor that Alice street should extend south of that block. But it is objected on the other side that, if this was the intention of the proprietor, he would have designated Alice street by a line south of block 20, as was done in reference to other streets upon the plat. But the circumstance that there is no line there defining the boundary of that street can have no such controlling effect as the counsel for the plaintiffs is disposed to give it; for there is no line west of block 21, defining Main street, and yet it is not seriously claimed that it does not extend there. Indeed, upon an examination of the plat itself, it seems impossible to arrive at any other conclusion than that it was the intention of the original proprietor to have Alice street extend across Main street, and along the south side of block 20."

Substantially all of the decided cases, whether based upon strict or liberal views, as to what constitutes a dedication, show, beyond controversy, that the facts stipulated and proven in the present case are sufficient to clearly establish the dedication of Fallon street to the public. City of Cincinnati v. White, 6 Pet. 431, 438; Mayor, etc., of New Orleans v. U. S., 10 Pet. 662; Morgan v. Railroad Co., 96 U. S. 716, 723; Potomac Steamboat Co. v. Upper Potomac Steamboat Co., 109 U. S. 672, 684, 3 Sup. Ct. 445, and 4 Sup. Ct. 15; Kit-

tle v. Pfeiffer, 22 Cal. 484, 489; Stone v. Brooks, 35 Cal. 489, 501; San Leandro v. Le Breton, 72 Cal. 170, 175, 13 Pac. 405; City of Eureka v. Armstrong, 83 Cal. 623, 22 Pac. 928, and 23 Pac. 1085; People v. Hibernia Savings & Loan Soc., 84 Cal. 634, 24 Pac. 295; Archer v. Salinas City, 93 Cal. 43, 51, 28 Pac. 839; Ham v. Council (Ala.) 14 South. 9; Hurley v. Boom Co., 34 Minn. 143, 24 N. W. 917; Great Northern Ry. Co. v. City of St. Paul, 61 Minn. 1, 7, 63 N. W. 96; Beasley v. Council (N. J. Sup.) 35 Atl. 797; City of Indianapolis v. Kingsbury, 101 Ind. 200, 210; Rhodes v. Town of Brightwood, 145 Ind. 21, 24, 43 N. E. 942; Town of Woodruff Place v. Raschig (Ind. Sup.) 46 N. E. 990, 993; Cook v. Harris, 61 N. Y. 448, 454; Flack v. Village of Green Island, 122 N. Y. 107, 114, 25 N. E. 267; Smith v. City of Buffalo, 90 Hun, 118, 124, 35 N. Y. Supp. 635; Mayor, etc., v. Frick, 82 Md. 77, 83, 33 Atl. 435; Winter v. Payne, 33 Fla. 470, 471, 15 South. 211; Porter v. Carpenter (Fla.) 21 South. 788; Evans v. Blankenship (Ariz.) 39 Pac. 812; Elliott, Roads & S. 111; 2 Dill. Mun. Corp. (4th Ed.) §§ 635, 636, 640.

2. The question as to the acceptance of the dedication is equally clear. The adoption of the ordinance on August 27, 1853, set forth in the stipulation, including so much of Fallon street as was above high-water mark, constitutes an acceptance by the city. The map was made prior to August 3, 1853. The deed of partition which made express reference to this map was filed for record August 15, 1853. The map was filed for record September 2, 1853. When the map was filed for record, the acceptance became complete, and the dedication theretofore made, under the principles announced in several of the authorities heretofore cited, became irrevocable. Moreover, the acceptance by user of that part of Fallon street from Sixth to Tenth street was an acceptance of the whole of Fallon street to Thirteenth street, to be thereafter used when occasion or necessity required it.

In Taraldson v. Town of Lime Springs (Iowa) 60 N. W. 658, there was a vacant strip of land, not marked by any name, about 20 feet wide, on which the lots marked on the map abutted, and which the town of Lime Springs claimed as an alley. The town was incorporated in 1869. The plaintiff had owned certain lots since 1877. At the time of the incorporation, the strip of land in controversy and the adjoining lots were inclosed together, and remained in that condition until 1892, when there was an attempt to open the strip as a public alley, and proceedings were then instituted to prevent it. The court, upon this point, said:

"It is also claimed that, even though there was a dedication of the alley by the recording of the plat, there is nothing to show an acceptance on the part of the public. The evidence shows that for some years the alley was used to some extent, as much as it naturally would be with the then settlement of the town. There was at that time, and has since been, but little, if any, use for the alley; but we are not to forget that there are prospective as well as present considerations in such enterprises. The record shows that this alley had for a time such recognition by the public as is general in such cases, considering the surroundings. The necessity for its use then was slight, and hence the evidence of acceptance slight, but it was sufficient. There should be reasonable presumptions in favor of the preservation of such public interests, and the acts to constitute an acceptance on the part

of the public 'need be such only as the public wants demanded.' City of Waterloo v. Union Mill Co., 72 Iowa; 437, 34 N. W. 197."

In Town of Derby v. Alling, 40 Conn. 410, 432, the court said:

"The first point made by the respondents is, that, in legal construction, the operation of the deed is confined to Third street as then actually used and traveled, and does not extend to the whole of Third street as delineated on the map. On this point, we think, the respondents are clearly wrong. The map is expressly referred to in the deed, and by reference is made part of it. We think, therefore, that the deed must be construed as embracing all the land which is included within the limits of the street as delineated on the map. * * * Where * * * a paper city is laid out as an entire thing, the dedication of all the streets to the public is entire; and, when the public act upon such dedication, the acceptance of part may, and in general will be, construed as an acceptance of the whole as an entirety. The public enter upon a part in the name of the whole, to enjoy the parts as from time to time such enjoyment of them becomes necessary. This is carrying into effect the manifest intent of the grantor, and of those for whose benefit the grant is made; and we see no difficulty in allowing this intent to prevail, and to call it a dedication in præsenti to be carried into effect in futuro. * * * We feel no hesitation, therefore, in holding upon the facts appearing in the record, and upon the deed in connection with these facts, that Messrs. Phelps and Smith made an irrevocable dedication of the whole of Third street to the public for the use of the highway, not, however, to be necessarily opened and worked immediately, but to be opened whenever, within a reasonable time thereafter, the opening of it to its full extent should be required, and that the acceptance of the deed by the town, * * * of the portions of the street which were opened, is a constructive acceptance of the dedication of the entire street."

The fact that only a portion of Fallon street, as marked upon the map, was opened up and used, and that there was a nonuser of the other portion for a number of years, does not, under the well-settled principles of the decided cases upon this subject, devest or impair the right of the public to open up and use the remaining portion of the street dedicated and accepted as a public street whenever the exigencies of the public travel, and the wants and needs of the community, require it. Barclay v. Howell, 6 Pet. 498, 506; Grogan v. Town of Hayward, 4 Fed. 161, 164; Coffin v. City of Portland, 27 Fed. 412, 420; Taraldson v. Town of Lime Springs (Iowa) 60 N. W. 658; Town of Lake View v. Lebahn (Ill. Sup.) 9 N. E. 269, 272; Heitz v. City of St. Louis, 110 Mo. 618, 625, 19 S. W. 735; Flersheim v. City of Baltimore (Md.) 36 Atl. 1098.

3. Under the laws of some of the states, the fact that appellant had been in the actual possession of the land for such a length of time as is shown in this case would have enabled it to recover upon the plea of adverse possession; but in California the law is well settled that no one can acquire by adverse possession, as against the public, the right to obstruct a street dedicated to public use, and thus prevent the use of it as a public highway. Hoadley v. City and County of San Francisco, 50 Cal. 265, 274; People v. Pope, 53 Cal. 437, 450; City of Visalia v. Jacob, 65 Cal. 434, 4 Pac. 433; San Leandro v. Le Breton, 72 Cal. 170, 177, 13 Pac. 405. Where this rule prevails, the authorities are all to the effect that when the land has been dedicated to, and accepted by, the public, it becomes irrevocable; and mere lapse of time, or the making of valuable improvements thereon, constitutes no defense whatever. Buntin v. City of Dan-

ville, 93 Va. 200, 208, 24 S. E. 830; Ham v. Council, supra; Taraldson v. Town of Lime Springs, supra; Mayor, etc., v. Frick, 82 Md. 77, 86, 33 Atl. 435; Elliott, Roads & S. 667, 670.

We do not understand appellant to claim that the statute of limitations can be pleaded as a defense. But the suggestion is made that the land in controversy was fenced by the owners in 1855, and that ever since 1858 it has been occupied as a private residence, and that this use, which is inconsistent with the theory of dedication, is in itself a revocation of the offer to dedicate. But this suggestion is shorn of all its strength by the unquestioned fact that the land was dedicated and accepted long prior to 1855, and before any use was made of the ground inconsistent with the theory of dedication. The facts are that the dedication and acceptance became complete in 1853, and the owners of the land could not thereafter revoke the dedication previously made.

The case of People v. Reed, 81 Cal. 70, 22 Pac. 474, hereinbefore referred to, is not in opposition to the views herein expressed. It is based upon an entirely different state of facts, and has no application to this case.

In Wolfskill v. Los Angeles Co., 86 Cal. 405, 412, 24 Pac. 1094, 1096, the court, after quoting from the Reed Case, said:

"That case was decided in bank, and the principles there laid down, and here affirmed, furnish ample protection to this plaintiff, and to all others whose lands have been platted into streets, lots, and blocks, against any claims of the public to streets and highways of which the offer of dedication has not in some form been accepted by the public authorities. But in the Reed Case, as before stated, there was never an offer of dedication, for the reason that the map was never recorded. Some time after the map was made, the land in controversy in that case was actually inclosed, and substantial buildings erected thereon; and the same were occupied for more than twenty years before there was any attempt made to accept what was claimed to have been, by reason of the making of the map, an offer of dedication. The court held, not only that there had been no offer of dedication to be accepted, but also that even if the making of the map, without recording the same, and the sale of lots according to the same, had been an offer of dedication, there had been a withdrawal of the offer more than twenty years before the attempted acceptance. The facts of that case are so unlike those here developed that the case is not in point."

The same distinction is again referred to, at considerable length, in Archer v. Salinas City, 93 Cal. 54, 28 Pac. 839.

With reference to People v. Reed and some of the other California cases cited by appellant, we adopt, as applicable to the case in hand, the language of the court in People v. Hibernia Savings & Loan Soc., supra:

"Quite a number of cases involving the dedication of streets and highways have recently been decided by this court. The facts in no two of them were exactly alike, and some of them were of difficult solution. But in none of these cases were any principles stated with which the conclusion of the court in the case at bar at all conflicts."

4. In arriving at the conclusions above stated, we have not overlooked the argument of counsel based upon the fact that appellant introduced in evidence the certificate of the city engineer to show that the east line of the Peralta patent, which, being a Spanish grant, is presumed to follow the line of high tide, is at no point less than 500

feet distant from the east line of block 166. This testimony, if admissible, might tend to show that the Kellersberger map does not correctly delineate the line of the marsh or ordinary high tide. We fail to see any substantial reason why such evidence should be allowed to destroy the force and efficacy shown by the adoption of the map, which, in our opinion, furnishes the only safe guide for the court to follow in the determination of the questions involved herein. If appellant owns the land for 500 feet east of the easterly line of Fallon street, that cuts no more figure in the case, with reference to the dedication, than the fact that appellant's grantors own the land northerly of the streets laid down on the map. The only dedication that was made was of the blocks and streets designated on the map. It shows a vacant space for Fallon street. We have nothing to do with any of the outside lands. The map shows the condition of affairs as they existed at the time the dedication was made; and, as the map was referred to in the deeds of the owners of the lands, no outside testimony of descriptions in patents for outside lands, not included upon the maps, should be allowed to change the dedication of streets as shown upon the map.

5. Finally, it is claimed that, in any view of the case, the judgment of the circuit court is erroneous, in this, to wit: That the scale of the Kellersberger map shows that the narrow strip of land on Fallon street north of Tenth street, as delineated on the map, is not over 40 or 50 feet wide, and the line of marsh, or high tide, is not, therefore, 80 feet distant from the north half of block 166, according to the scale of the map; and, as the city only claims a dedication to the marsh line, it has obtained a judgment for more than the evidence shows it is entitled to. With reference to this point, but little need be said. In the nature of the case, and from the character of the map, it should not be expected that the various thread lines intended to mark the marsh line would be as perfect as the lines of the street. The testimony of the city engineer, and of other witnesses who had been residents of Oakland for many years, shows that Fallon street opposite block 166 is over 80 feet wide,—about 88 or 90,—to the marsh line.

Upon the whole case, we are of opinion that the judgment of the circuit court is correct; and it is therefore affirmed, with costs.